UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF YORK

| | | |
|---|---|---|
| VAĒSO, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Cause No. |
| | ) | |
| HIGH PEAK SOFTWARE, INC. | ) | **C O M P L A I N T** |
| | ) | |
| *Defendant.* | ) | |

**VAĒSO, INC.**, as and for its Complaint of the Defendant, **HIGH PEAK SOFTWARE,**

**INC.**, alleges as follows:

### PARTIES

1.      Plaintiff is a corporation maintaining a regular place of business in the State of Florida.

2.      Defendant is a corporation maintaining a regular place of business in the State of Georgia.

3.      Pursuant to agreement between the parties (**Exhibits 1 and 2**), venue and jurisdiction lies in

New York.

### VENUE and JURISDICTION

4.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1332 and for

the reasons listed herein.

5.      Pursuant to agreement between the parties, at Section 18.2 of **Exhibit 1**, "Dispute Resolution.

All disputes and litigation arising under or relating to this Agreement which cannot be resolved

pursuant to Section 18.1 above shall be subject to the exclusive jurisdiction of the deferral

The Weinstein Group PC                                                                                           Page 1
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

courts sitting in New York, NY. The parties hereby irrevocably submit to the personal jurisdiction of such courts and irrevocably waive all objections to such venue."

6.      That the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

7.      The parties have previously agreed in writing that the threat of breach of confidentiality is subject to emergency application to the Court.

## STATEMENT OF CLAIM

8.      Plaintiff repeats, reiterates and realleges each and every prior allegation as though set forth at length herein.

9.      Vaēso and High Peak Software, Inc. ("HPS") began their business relationship on August, 2018. Their agreement was memorialized in a writing (**Exhibit 1**) that was amended (**Exhibit 2**).

10.     Set forth in the agreement is a provision entitled "Confidentiality" which reads:

"12     **CONFIDENTIALITY**
        Information exchanged under this Agreement will be treated as confidential if identified as such at disclosure or if the circumstances of disclosure would reasonably indicate such treatment. Notwithstanding any failure to so identify or mark it as such, the following categories of Customer's information shall automatically be deemed to be confidential information: b) discoveries, novel ideas (including, without limitation, ideas relating to new products, new services, or new methods of doing business), developments, designs, improvements, inventions, blueprints, structures, software, systems, content, processes (including technical and business processes), procedures (including technical and business procedures), methods, manuals, computer programs, know-how, data, techniques, formulas, marketing and business plans and outlines, strategies, budgets, forecasts, projections, unpublished financial statements, costs,

The Weinstein Group PC                                                                    Page 2
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

fee schedules, client and supplier lists, client and prospective client databases, access codes and similar security information and procedures, and all patents, copyrights, mask works, trade secrets, and other proprietary rights thereto; c) data regarding Customer's and its affiliates' suppliers, vendors, employees, investigators, developers, researchers, investors and business partners; d) Customer's and its affiliates' costs, expenses, financial position, prices, possible revenues and profit margins; and e) other processes, systems, software, hardware, designs, plans, strategies and configurations Customer or its affiliates' use or plan to use to conduct its business. Confidential information may only be used for the purpose of fulfilling obligations or exercising rights under this Agreement, and shared with employees, agents or contractors with a need to know such information to support that purpose. Confidential information will be protected using a reasonable degree of care to prevent unauthorized use or disclosure for five (5) years from the date of receipt or (if longer) for such period as the information remains confidential. These obligations do not cover information that:

      I. is or becomes available to the public through no fault of the receiving party;

      II. was known or becomes known to the receiving party without obligation of confidentiality;

      III. is rightfully received by the receiving party from a third party without a duty of confidentiality;

      IV. is independently developed by the receiving party without reference to the confidential information of the disclosing party; or

      V. where disclosure is required by law or a governmental agency.

For the avoidance of doubt, under no circumstances may Provider:
x) disclose Customer's confidential information (including any Deliverables) to a competitor of Customer (as defined in Section 10.2(f) above) or y) disclose or provide access to Customer's confidential

The Weinstein Group PC
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

information (including any Deliverables) to any client or potential client of Provider, or to any employee or contractor of Provider not directly involved in the development of Deliverables for Customer."

11. In August 2018, Vaēso agreed with "Exhibit B" rates, which were a part of **Exhibit 1**.

12. Vaēso and HPS thereafter agreed to a "cost to company" rate ("CTC") in exchange for 75,000 warrants to be earned equally for six (6) semesters based on quality and timeliness metrics.

13. A new agreement was shared between the parties with the above conditions, modifying the Exhibit B rates to CTC rates.

14. On August 1, 2019, HPS issued credit notes, leaving an open balance of approximately $41,000 which was paid.

15. In the meantime, HPS was not living up to its end of the bargain. Vaēso sent numerous emails over several months complaining about:

   a.  HPS's lack of knowledge of building processes and procedures to enable the industrialization (i.e. significant improvement inefficiency, effectiveness, timely delivery, quality as measured by number of bugs found and also ability for the timely hire of new talent) of the HPS Team allocated to Vaēso;

   b.  extensive and long delivery delays;

   c.  Unacceptable number of "bugs" (critical, road-blocker, major and minor) in each release;

   d.  Continuing number of unresolved bugs;

   e.  Inability of HPS to hire talent at the speed demanded by Vaēso.

The Weinstein Group PC                                                                 Page 4
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

16. Vaēso demanded that HPS give a credit of three months because of the foregoing problems.

17. HPS agreed to credit two months due to their poor performance.

18. In accordance with the agreement between the parties, in July, 2020, Vaēso sent to HPS the proposal to receive 76,506 warrants with vesting on July 1, 2020 with a further 75,000 warrants to be earned in vesting every semester for six semesters.

19. The foregoing was contingent on HPS's ability to hire required new team members based on Vaēso's written hiring requirements.

20. At the time, the 76,506 warrants were valued at $137,710.

21. In October, 2020, HPS responded to the writing provided in July.

22. Over the next several months, the parties exchanged comments on the proposed agreement and continued working based upon the CTC rates with Vaēso making monthly payments.

23. In September 2021, Vaēso sent an email to HPS stating that it would like to discuss the termination of the relationship, exercising the transfer of the existing HPS Team allocated to Vaēso.

24. HPS responded by letter dated November 1, 2021 stating that there was a balance of $318,396 due and owing.

25. HPS then invoked Section 18 of the agreement (**Exhibit 1**) to discuss good faith resolution.

26. Vaēso responded by providing an accounting of those facts for the period Aug 1, 2018 until October 31, 2021 demonstrating that Vaēso did not owe HPS any outstanding invoices.

The Weinstein Group PC                                                                Page 5
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

27. By email dated November 12, 2021, HPS advised Vaēso that because it viewed there to be a balance, it was claiming ownership of all Developed Property – meaning Vaēso's confidential information.

28. In December, 2021, Vaēso and HPS conducted several calls to try to resolve their differences.

29. The next communication was from HPS' counsel dated January 14, 2022 demanding an extortionate amount of money or HPS would withdraw their workers, effectively crippling the Plaintiff.

30. HPS then began to remove workers from Vaēso.

31. Further, HPS withheld password information from Vaēso, freezing them from their own servers.

32. This is a financial dispute between the parties.

33. However, in the meantime, HPS is purporting to take Vaēso's confidential information and use it as its own.

34. Once shared, Vaēso's confidential information cannot be recovered and Vaēso will be irreparably damaged.

35. The foregoing notwithstanding, the Defendant has been threatening to convert Vaēso property and now has taken affirmative steps in furtherance of the same.

The Weinstein Group PC                                                                Page 6
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

36.    Plaintiff repeats, reiterates and realleges each and every prior allegation as though set forth at length herein.

37.    HPS has breached its agreement with Vaēso by HPS' lack of knowledge of building processes and procedures to enable the industrialization of the HPS Team allocated to Vaēso.

38.    HPS has breached its agreement with Vaēso by failing to provide any improvement in inefficiency, timely delivery, or quality product

39.    HPS has breached its agreement with Vaēso by providing material that was substantially defective and unusable.

40.    HPS has breached its agreement with Vaēso with extensive and long delivery delays.

41.    HPS has breached its agreement with Vaēso with an unacceptable number of "bugs" (critical, road-blocker, major and minor) in each software release.

42.    HPS has breached its agreement with Vaēso because it developed a product that had a long list of unresolved bugs, some of them several years old, which HPS never had the management or leadership ability to.

43.    HPS has breached its agreement with Vaēso because of HPS' inability to hire talent at the speed demanded by Vaēso.

44.    That as a result of the foregoing, HPS has breached its agreement with Vaēso resulting in damages in an amount unknown and to be determined at the Trial of this matter, but believed to exceed $1,000,000.

The Weinstein Group PC
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

Page 7

45. Wherefore, Plaintiff demands judgment against the Defendant in an amount to be determined at the Trial of this matter and verily believed to exceed $1,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing)

46. Plaintiff repeats, reiterates and realleges each and every prior allegation as though set forth at length herein.

47. That HPS' conduct in this matter is a breach of good faith and fair dealing to which Plaintiff is entitled.

48. That HPS' conduct in this matter has caused significant injury to the Plaintiff in loss of time, loss of employees as well as additional and avoidable expense.

49. That HPS' conduct in freezing Vaēso from its services was done in bad faith.

50. That HPS' conduct in removing works from the Vaēso project was done in bad faith.

51. That HPS' conduct in attempting to monetize Vaēso's confidential information is done in bad faith.

52. All of the foregoing has resulted in damages to the Plaintiff in an amount unknown and to be determined at the Trial of this matter but verily believed to exceed $1,000,000.

53. Wherefore, Plaintiff demands judgment against the Defendant in an amount to be determined at the Trial of this matter and verily believed to exceed $1,000,000.

The Weinstein Group PC
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

Page 8

## AS AND FOR A THIRD CAUSE OF ACTION
### (Permanent Injunction)

54.     Plaintiff repeats, reiterates and realleges each and every prior allegation as though set forth at length herein.

55.     By agreement between the parties, the confidential information and deliverables was/is/and will be the property of Vaēso.

56.     Put directly into the agreement is a prohibition of HPS from misusing Vaēso information.

57.     At Section 12, the same reads, in part:

> "For the avoidance of doubt, under no circumstances may Provider: x) disclose Customer's confidential information (including any Deliverables) to a competitor of Customer (as defined in Section 10.2(f) above) or y) disclose or provide access to Customer's confidential information (including any Deliverables) to any client or potential client of Provider, or to any employee or contractor of Provider not directly involved in the development of Deliverables for Customer."

58.     The foregoing notwithstanding, HPS is purporting to claim ownership over Vaēso's confidential information and HPS must be prevented from using, selling or sharing the same.

59.     Wherefore, Plaintiff demands judgment against the Defendant of a permanent injunction preventing HPS from accessing, selling or otherwise using Vaēso's confidential information.

The Weinstein Group PC                                                    Page 9
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in this matter.

## PRAYER FOR RELIEF

**W H E R E F O R E**, Plaintiff demands judgment against the Defendant:

a. In the first cause of action, in an amount unknown, and to be determined by this Court but is believed to exceed $1,000,000;

b. In the second cause of action, in an amount unknown, and to be determined by this Court but is known to exceed $1,000,000;

c. In the third cause of action, for a permanent injunction preventing the Defendant from accessing, selling or otherwise using Vaēso's confidential information;

d. Each together with the costs, fees and interest as set forth herein; and

e. For such other and further relief as to this Court may appear just and proper.

Dated: February 13, 2022
    Syosset, New York

     Yours, etc.,

     THE WEINSTEIN GROUP, P.C.

     By:
     LLOYD J. WEINSTEIN, Esq.
     (Rule §130-1.1a) (NYS Tech Law §304(2))
     6800 Jericho Turnpike, Suite 112W
     Syosset, New York 11791
     Telephone: 516-802-5330
     Facsimile: 516-802-5332
     ljw@theweinsteingroup.net

The Weinstein Group PC                 Page 10
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Tel: (516) 802 5330
Fax.: (516) 802 5332
ljw@theweinsteingroup.net

VERIFICATION

STATE OF _Florida_ _Miami-Dao_ )
                                    ) ss:
COUNTY OF _Miami-Dade_ )

**JOSE SUAREZ,** being duly sworn, deposes and says:

I am an officer of the Plaintiff corporation in the captioned matter. I have read the foregoing

Complaint and know the contents thereof. The same is true and correct to the best of my

knowledge, and as for any such matters alleged upon information and belief, deponent believes

the same to be true.

_____
JOSE SUAREZ

Sworn to before me this _13_
Day of February, 2022.

_Gerardine Pierre_
Notary Public

GERARDINE PIERRE
Notary Public-State of Florida
Commission # GG 305454
My Commission Expires
February 25, 2023