# LISTON ABRAMSON

The Chrysler Building
405 Lexington Avenue, 46th Floor
New York, New York 10174

New York Office
Main: (212) 257-1630
www.listonabramson.com

February 18, 2022

Re:    Vaeso, Inc. v. High Peak Software, Inc.
         Case No. 22-cv-01220-PAE (S.D.N.Y.)

Dear Judge Engelmayer:

This letter brief is submitted pursuant to this Court's February 14, 2022 Order directing Defendant High Peak Software, Inc. ("HPS") to respond to Plaintiff's emergency motion for preliminary injunction and temporary restraining order by February 18, 2022.

Plaintiff seeks an order to "enjoin and restrain the Defendant High Peak Software, Inc. and all subsidiary or related companies, from using, selling or otherwise manipulating Plaintiff's confidential information."  [Plaintiff's Memorandum of Law, Dkt. 2-2, p. 8.].

A party seeking preliminary injunctive relief in this Court must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction[,] … the moving party must first demonstrate that such [irreparable] injury is ***likely*** before the other requirements for the issuance of an injunction will be considered." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (emphasis added).

Plaintiff is not entitled to the entry of a preliminary injunction or temporary restraining order against HPS because there is no threat of irreparable harm to Plaintiff.[1]

In fact, HPS has, through counsel, affirmatively represented that HPS will not use, disseminate, or monetize any of Plaintiff's confidential information the Developed Property until this Court determines the ownership of the Developed Property.  [*See* February 16, 2022 Email, attached as Exhibit A.].  HPS reiterates this representation to the Court.

A review of the facts underlying this dispute are instructive to the Court's determination.

On August 1, 2018, HPS entered into a Master Services Agreement ("MSA") Impactiva S. de R.L. ("Impactiva"), Plaintiff's affiliated entity. The MSA was later amended to designate Plaintiff as a third-party beneficiary.[2]

---

[1] Plaintiff cannot establish the other required elements; however, due to space constraints, HPS will not address those other elements in this letter brief.  HPS reserves the right to argue that Plaintiff has not met its burden on those at a hearing, if scheduled.

[2] Impactiva and Plaintiff will be referred to herein as "Plaintiff."

LISTON ABRAMSON

Under the MSA, Plaintiff agreed to pay HPS for its software development services in accordance with a billing schedule incorporated into the MSA as Exhibit B.[3]  The MSA defines "Developed Property" as:

> a) Any and all inventions however embodied, know how, works in any media, software (in all forms of code), information, trade secrets, materials, Deliverables, and any other work product or work of authorship of any kind that [HPS] makes, develops or reduces to practice, alone or jointly with others, in the course of performing work for [Plaintiff] under this Agreement or as a result of that work … [and]  b) any and all property rights (including without limitation all copyrights, patents, trade secrets, moral rights, and other property rights) in and to any and all of the property described in clause (a) above.

[Dkt. 2-3, ¶ 9.2.].

The MSA also provides that "***subject to the payment by [Plaintiff] of all amounts owed to [HPS]*** therefor … the [Developed Property] shall be the sole and exclusive property of [Plaintiff]." [Dkt. 2-3, ¶ 9.2 (emphasis added).].

In approximately April 2019, Plaintiff and HPS reached an agreement to deviate from the billing rates in Exhibit B.  The agreement was that HPS would bill resources at "cost" with no markup in exchange for HPS receiving equity.  The value of the equity was intended to compensate HPS for the profit it was foregoing by only invoicing Plaintiff on an at-cost basis.

HPS developed software for Plaintiff; however, Plaintiff has not paid HPS.  At this time HPS has unpaid amounts owed pursuant to the MSA in the amount of $283,294.  Plaintiff also owes HPS approximately $1,842,879 pursuant to the mutual agreement to deviate from the billing rates set forth on Exhibit B to the MSA.

On October 3, 2021, Plaintiff contacted HPS and expressed its intent to terminate the MSA. [*See* Dkt. 2-5, p. 3.].  On November 1, 2021, HPS notified Plaintiff that it still owed HPS money under the MSA, and accordingly, Plaintiff had no vested interest in the Developed Property.  [Dkt. 2-5, pp. 5-6.].  HPS' counsel reiterated HPS' position in correspondence dated January 14, 2022, and January 20, 2022.

At no time has HPS ever stated or implied that HPS would use, disseminate, or monetize the Developed Property or Plaintiff's Confidential Information.  [*See generally*, Dkt. 2-5.].  To the contrary, HPS has affirmatively represented to Plaintiff, and HPS further affirmatively represents to the Court, that it has no intention of using, disseminating, or monetizing Plaintiff's confidential information or the Developed Property until such time as this Court makes a determination as to the ownership of the Developed Property.  [Ex. A.].

Because there is no existing nor imminent threat of use, dissemination, or monetization, Plaintiff cannot establish the necessary element of irreparable harm.[4]  Even if this Court gave no

---

[3] Dkt. 2-3, p. 19.

[4] Plaintiff's assertion that "Defendant consents to the issuance of a temporary restraining order" is untrue.  [Dkt. 2-2, p. 7.].  The section of the MSA cited by Plaintiff only permits a party to *pursue* equitable relief from a court.  [Dkt. 2-3, ¶ 18.3.].

LISTON ABRAMSON

credence to HPS' representation, Plaintiff's only record evidence for its contention of threatened harm are HPS' November 1, 2021 email (Dkt. 2-5, pp. 3-7) and the self-serving Affidavit of Jose Suarez (Dkt. 2-1) submitted in support of Plaintiff's Motion for Temporary Restraining Order. Neither support Plaintiff's claim of imminent injury.

Plaintiff claims it received a direct threat from HPS that HPS "retains its claim as to ownership of all Developed Property." [Brief, p. 1.]. However, Dkt. 2-5 contains no threat, either express or implied, that HPS intends to use, disseminate, or monetize the confidential information or the Developed Property. [*See generally* Dkt. 2-5.]. In fact, Dkt. 2-5, solely concerns Plaintiff's non-payment and the application of Section 9.2 of the MSA, that HPS maintains a claim of ownership of all Developed Property under the MSA due to non-payment. [*Id*.].

Neither does the Affidavit of Jose Suarez support Plaintiff's assertion that HPS intends, or has threatened, to use, disseminate, or monetize the confidential information or the Developed Property. Plaintiff's sole assertion of a threat appears in paragraph 37 of the Affidavit, where Mr. Suarez states that he had been "advised that Madhu Seshadri [a current HPS employee] … called Mamatha Naganna [a former HPS employee] … to give him a 'grooming session' (i.e.. a verbal explanation of the product module features developed [in the software])." [Dkt. 2-1, ¶ 37.]. Plaintiff characterizes this as indicating that "HPS is beginning to think how to monetize Vaēso's 850,000 lines of code developed …" Plaintiff's characterization is neither accurate, nor an "imminent" threat.

The statement is inadmissible hearsay and not subject to a recognized exception which would permit admissibility. Even if admissible, nothing in the statement indicates HPS' intent to use, disseminate, or monetize Plaintiff's confidential information or the Developed Property. The statement concerns an exit interview conducted upon Ms. Naganna's voluntary resignation from HPS, for the purpose of ensuring that HPS understood the status of the project Ms. Naganna had been working on for HPS. Such exit interviews are the standard practice for HPS, and nothing about such practice could reasonably be interpreted to indicate an intent to misappropriate.[5]

Moreover, the evidence in this case, including HPS' representations to the Court, affirmatively establishes that HPS *does not intend* to use, disseminate, or monetize Plaintiff's confidential information or the Developed Property. [Ex. A.].

There is no indication anywhere supporting Plaintiff's claim of misappropriation. Accordingly, Plaintiff's Motion for Temporary Restraining Order should be denied.

Respectfully submitted,

/s David G. Liston
David G. Liston

cc: Counsel of Record

---

[5] If this Court holds a hearing, HPS will present admissible evidence supporting this statement.