UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
VAESO, INC., :
: 22 Civ. 1220 (PAE)
Plaintiff, :
: ORDER
-v- :
:
HIGH PEAK SOFTWARE, INC., :
:
Defendant. :
:
:
------------------------------------------------------------------- X

PAUL A. ENGELMAYER, District Judge:

On February 14, 2022, the Court received an emergency motion seeking a preliminary injunction and temporary restraining order from plaintiff Vaeso, Inc. ("Vaeso"). Dkt. 2. Vaeso claims that defendant High Peak Software, Inc. ("HPS") has threatened to use, disseminate, and/or monetize the computer code that HPS developed for Vaeso, which, Vaeso claims, would violate the parties' contract and cause irreparable harm. Dkt. 2-1 ("Suarez Aff.") ¶ 4; Dkt. 2-2 ("Mem.") at 2. That same day, Vaeso filed a complaint against HPS, alleging breach of contract and breach of good faith and fair dealing. *See* Dkts. 1, 6 ("Compl.") (corrected filing).

On February 18, 2022, at the Court's request, *see* Dkt. 7, HPS responded. It principally argued that Vaeso cannot show irreparable harm, or a likely success on the merits, because (1) HPS has repeatedly and affirmatively represented that it will not use, disseminate, or monetize Vaeso's confidential information before the Court determines the ownership of such information; and (2) Vaeso's claim that HPS intends to do so is unsupported. Dkt. 13 ("Opp.").

For the reasons that follow, the Court denies Vaeso's request for emergency relief.

I.  **Background**

Since August 2018, Vaeso and HPS have had a business relationship, but a financial dispute has recently arisen between them. Compl. ¶¶ 9, 32; Mem. at 2. The Master Services Agreement ("MSA") governing the relationship includes a confidentiality provision. Compl. ¶ 10. In its emergency application, Vaeso argues that it is entitled to emergency relief because, in violation of the confidentiality provision, HPS is "threatening to convert [Vaeso's] property"—the computer code HPS developed for Vaeso—and "has taken affirmative steps in furtherance of the same." Suarez Aff. ¶ 36. Vaeso states that, once HPS has shared its computer code with others, Vaeso will suffer irreparable harm, as this confidential information "cannot be recovered." *Id.* ¶ 35.

As evidence of this threat, Vaeso relies on the affidavit of its CEO, Jose Suarez, who attests that he was "advised that Madhu Seshadri, a current HPS employee" who had worked on Vaeso's project with HPS but was later "terminated for his incompetence, called Mamatha Naganna asking her to give him a 'grooming session' (i.e. a verbal explanation of the product module-features developed since his removal from the Vaeso project in August 2021)." *Id.* ¶ 37; Mem. at 2. According to Vaeso, "[t]his contact highlights . . . that HPS is beginning to think how to monetize" the computer code that HPS developed for Vaeso, Suarez Aff. ¶ 38, and itself "expressly violates the terms of the agreement between the parties," Mem. at 3.

In its opposition to Vaeso's bid for emergency relief, HPS represents that, through its counsel, it has "affirmatively represented that HPS will not use, disseminate, or monetize any of [Vaeso's] confidential information until this Court determines the ownership of the Developed Property," as defined in the MSA. Opp. at 1. HPS also argues that the ownership over the property is contested because the MSA provides that the Developed Property would belong to

2

Vaeso only "subject to the payment by [Vaeso] of all amounts owed to [HPS]." *Id.* at 2 (quoting Dkt. 2-3 ("MSA") ¶ 9.2) (emphasis omitted). And, HPS claims, Vaeso owes it more than $2 million, complicating Vaeso's claim to own the code. *See id.* HPS further disputes Vaeso's claim that HPS is in the initial phases of sharing with others, and thereby monetizing, Vaeso's code. It asserts that the statement on which Vaeso CEO Suarez relies occurred when Seshadri, a current HPS employee, called Naganna, a former HPS employee, in the context of an exit interview with Naganna. That interview, HPS represents, was "for the purpose of ensuring that HPS understood the status of the project Ms. Naganna had been working on for HPS." *Id.* at 3.

## II. Analysis

To justify a preliminary injunction or a temporary restraining order ("TRO"), a movant must show: (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest favors granting an injunction. *See Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

For both a preliminary injunction and a TRO, "[i]rreparable harm is the single most important prerequisite for [its] issuance[.]" *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999)). Irreparable harm means that, absent emergency relief, the plaintiff "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six*

*Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up). That is, the alleged injury must be "so serious that 'a monetary award cannot be adequate compensation.'" *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985)).

Vaeso fails at the threshold to show an entitlement to emergency relief here because it has not persuasively demonstrated a genuine risk of irreparable harm. Vaeso conjectures that HPS will misuse the computer code that HPS helped Vaeso develop. But its basis for that conjecture is a secondhand account that Suarez received of a conversation between a present and a past HPS employee. But as HPS demonstrates, there is an entirely benign construction of that conversation, under which the conversation had nothing to do with such a plot. Moreover, Vaeso does not offer any corroboration for its thesis that HPS would seek to distribute or sell the code that it developed for Vaeso. Vaeso thus has not demonstrated that it "will suffer an injury that is neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc.*, 408 F.3d at 114 (internal quotation marks omitted). Indeed, even as cast by Vaeso, its evidence is no more than that "HPS *is beginning to think how* to monetize to claim." Suarez Aff. ¶ 38 (emphasis added). And HPS, for its part, denies any such intention, and has pledged to the Court—as it says its counsel has pledged to Vaeso—that it will not make extrinsic use of the code before the Court determines whether it or Vaeso owns the code at issue.[1]

---

[1] In so holding, the Court assumes *arguendo* that the software at issue, if disseminated, would cause irreparable harm. But Vaeso has not demonstrated why the harm it would experience would be incapable of remediation via monetary damages. Vaeso cites *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 419 (S.D.N.Y. 1999), in which software was found to be entitled to trade secret protection, but it does not make a factual showing why such is so here—or why the dissemination of that software would harm Vaeso in a manner that monetary damages could not remedy. *See Synergy Advanced Pharms., Inc. v. CapeBio, LLC*, No. 10 Civ. 1736 (SAS), 2010 WL 2194809, at *5 (S.D.N.Y. June 1, 2010).

Vaeso's showing is thus inadequate. Indeed, even accepting Suarez's interpretation of what he learned to indicate that Naganna was poised to tell Seshadri information about the code that Seshadri did not already have, Vaeso has not come forward with any evidence or indication as to what Seshadri was positioned to do with that information. And "the mere exposure of an employee to the . . . confidential information of a former employer does not, without more, create the threat of irreparable harm." *Accenture LLP v. Trautman*, No. 21 Civ. 2409 (LJL), 2021 WL 6619331, at *15 (S.D.N.Y. June 8, 2021). Rather, "[t]he operative question is whether there is a risk that such information will be used or disclosed in a way to cause harm." *Id.* (citing *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 280 (E.D.N.Y. 2002)). Vaeso has not demonstrated such here.

Independently, even if Vaeso had shown irreparable harm, its claim falters because it has not shown a likelihood of success. The parties' competing submissions at this early stage leave in equipoise the issue of whether Vaeso has a right to the code, to the exclusion of HPS. As such, Vaeso would need to demonstrate that the balance of hardships tipped decidedly in its favor. For much the same reasons that its showing of irreparable harm falls short, Vaeso has not so established.

Finally, the Court notes that Vaeso has twice asserted, as a basis for granting the emergency relief sought, that HPS consents to such relief. *See* Mem. at 7 (quoting § 18.3 of the MSA, which states that "Nothing herein shall preclude either party from seeking and obtaining from a court of competent jurisdiction appropriate equitable relief"); Dkt. 10 (letter from Vaeso's counsel asserting that HPS "agrees voluntarily to the relief sought in the Order to Show Cause" and attaching as exhibit email from HPS's counsel). The Court does not read either the MSA provision that Vaeso quotes or the email that it cites to commit HPS to any such position. As

5

HPS notes, the MSA provision merely allows Vaeso to pursue equitable relief. It does not state that such relief, whatever the facts, would be properly granted. As for the email, it states that "HPS has never threatened to use, disseminate, or monetize any of [Vaeso's] confidential information . . . . Nor does HPS have any plans to use, disseminate, or monetize any of [Vaeso's] confidential information[.]" Dkt. 10-1 at 1; *see* Opp. Ex. A. But HPS's forswearing of impropriety is not tantamount to consent to entry of emergency relief against it. Quite the contrary, HPS explicitly opposes the TRO and denies ever consenting to it. Opp. at 2 n.4. To the extent Vaeso posits that its bid for emergency relief has been consented to by its adversary, its claim to this effect is wrong.

## CONCLUSION

The Court accordingly denies the application for emergency relief. The Clerk of the Court is respectfully directed to close the motion pending at docket 2.

As defendant was served on February 14, 2022, it must answer or otherwise respond to the complaint by March 7, 2022. *See* Dkt. 8.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 25, 2022
New York, New York