UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VAESO, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> HIGH PEAK SOFTWARE, INC., <br><br> *Defendant.* <br><br><br> HIGH PEAK SOFTWARE, INC., <br><br> *Counterclaim Plaintiff,* <br><br> v. <br><br> VAESO, INC. and IMPACTIVA S. DE R.L., <br><br> *Counterclaim Defendants.* | Civil Action No. 1:22-cv-01220-PAE |

**DEFENDANT HIGH PEAK SOFTWARE, INC.'S
ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

COMES NOW Defendant/Counterclaim Plaintiff High Peak Software, Inc. ("HPS"), by and through undersigned counsel, and hereby files its Answer, Affirmative Defenses, and Counterclaims to Plaintiff/Counterclaim Defendant, Vaeso, Inc. ("Vaeso") and Counterclaim Defendant Impactiva S. De R.L. ("Impactiva") as follows:

1

## PARTIES[1]

1. HPS lacks sufficient knowledge and information to admit or deny the allegations contained in paragraph 1 of the Complaint.

2. Admitted.

3. Admitted.

## VENUE AND JURISDICTION

4. Admitted that venue is proper in this Court.

5. Admitted that the quoted language appears in paragraph 18.2 of the Master Services Agreement which is attached as Exhibit 1 to Vaeso's Complaint (the "MSA"). By way of further response, HPS states that the MSA speaks for itself. HPS denies any allegation of paragraph 5 that attempts to characterize or interpret the language of the MSA.

6. Admitted.

7. HPS denies the allegations contained in paragraph 7 of the Complaint.

## STATEMENT OF CLAIM

8. Paragraph 8 of the Complaint does not set forth any allegations of fact, therefore, no response is required. To the extent Paragraph 8 contains any allegations requiring a response, all such allegations are denied.

9. HPS denies the allegations contained in paragraph 9 of the Complaint. By way of further response, HPS states that Vaeso was not a party to the MSA. HPS further states that other than HPS, Counterclaim Defendant Impactiva was the only other party to the MSA. HPS further states that Vaeso became a third-party beneficiary of the MSA pursuant to the Amendment No. 1

---

[1] For the Court's convenience, HPS has reproduced Vaeso's organizational headings in this Answer. HPS does not concede to the factual accuracy of any such headings, and to the extent any such headings purport to contain allegations of fact, HPS denies any and all such allegations.

to Master Services Agreement dated September 20, 2020 ("Amendment") which is attached as Exhibit 2 to Vaeso's Complaint.

10. Admitted that the quoted language appears in paragraph 12 of the MSA. By way of further response, HPS states that the MSA speaks for itself. HPS denies any allegation of paragraph 10 that attempts to characterize or interpret the language of the MSA.

11. HPS admits in part and denies in part the allegations contained in paragraph 11 of the Complaint. HPS admits that the "Exhibit B rates" were a part of the MSA. By way of further response, HPS states that Vaeso was not a party to the MSA at the date of signing. HPS further states that other than HPS, Impactiva was the only other party to the MSA. HPS admits that Vaeso agreed to be bound by the "Exhibit B rates."

12. HPS denies the allegations contained in paragraph 12 of the Complaint.

13. HPS denies the allegations contained in paragraph 13 of the Complaint. By way of further response, HPS responds that in approximately April 2019, Impactiva/Vaeso and HPS reached an agreement to deviate from the billing rates in Exhibit B. The agreement was that HPS would bill resources at "cost" with no markup in exchange for HPS being compensated through receipt of an equity stake in Impactiva/Vaeso. The value of the equity stake was intended to compensate HPS for the lost profit it was foregoing by only invoicing Impactiva/Vaeso on an at-cost basis, which as of the date of this Answer is $1,842,879.

14. HPS denies the allegations contained in paragraph 14 of the Complaint.

15. HPS denies the allegations contained in paragraph 15 of the Complaint.

16. HPS lacks sufficient knowledge and information to admit or deny the allegations contained in paragraph 16 of the Complaint.

17. HPS denies the allegations contained in paragraph 17 of the Complaint.

18. HPS lacks sufficient knowledge and information to admit or deny the allegations contained in paragraph 18 of the Complaint.

19. HPS lacks sufficient knowledge and information to admit or deny the allegations contained in paragraph 19 of the Complaint.

20. HPS lacks sufficient knowledge and information to admit or deny the allegations contained in paragraph 20 of the Complaint.

21. HPS admits that it responded to Vaeso's July writing. By way of further response, HPS states that in its response to Vaeso, HPS notified Vaeso that Vaeso's warrant proposal did not accurately or adequately compensate HPS for its work performed under the MSA.

22. HPS admits that it worked with Vaeso to attempt to reach an agreement regarding the compensation owing to HPS for its work performed under the MSA. HPS admits that Vaeso made payments to HPS based on the "cost-to-company rates." By way of further response, HPS states that Vaeso's payments did not fully satisfy all payments due and owing to HPS under the parties' agreements.

23. HPS denies the allegations contained in paragraph 23 of the Complaint. By way of further response, HPS states that Vaeso contacted HPS in October 2021 and Vaeso expressed its intent to terminate the MSA.

24. Admitted that HPS responded by letter dated November 1, 2021, stating that a balance was owed to HPS. By way of further response, the stated outstanding balance was $318,396.53 under the "Exhibit B rates" as well as $1,933,420 under the "cost to company rates." HPS further states that as of the date of this Answer, the outstanding balance owed to HPS is $283,294 under the "Exhibit B rates" plus $1,842,879 under the "cost to company rates."

25. Admitted.

26. Admitted that Vaeso responded with a purported accounting. HPS denies all other allegations of paragraph 26. HPS specifically denies Vaeso's allegation that Vaeso did not owe HPS any outstanding payments.

27. Admitted that HPS advised Vaeso that due to outstanding payment obligations, HPS claimed ownership of all Developed Property. HPS denies all other allegations of paragraph 27.

28. HPS admits that it engaged in further communications with Vaeso to attempt to reach an agreement regarding the compensation owing to HPS for its work performed under the MSA.

29. Admitted that HPS communicated with Vaeso through counsel on January 14, 2022. All other allegations of paragraph 29 are denied. By way of further response, HPS states that HPS had repeatedly notified Vaeso, since at least November, 2021, that absent HPS's receipt of the payments due and owing to it under the parties' agreements, HPS would reassign its employees to perform work for other of HPS's customers rather than Vaeso.

30. Denied as stated. By way of further response, HPS advised Vaeso that it intended to allocate its human resources that had been working with Vaeso under the MSA to other projects.

31. HPS denies the allegations contained in paragraph 31 of the Complaint.

32. Admitted that Vaeso has outstanding invoices owed to HPS and this case involves, in part, a financial dispute; however, because Vaeso has not paid HPS for the work performed under the MSA, HPS maintains a claim to all Developed Property under the MSA.

33. HPS denies the allegations contained in paragraph 33 of the Complaint.

34. HPS denies the allegations contained in paragraph 34 of the Complaint.

35. HPS denies the allegations contained in paragraph 35 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

36.     Paragraph 36 of the Complaint contains no separate allegations; therefore, no specific response is required.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Paragraph 45 of the Complaint contains no separate allegations; therefore, no specific response is required. To the extent paragraph 45 sets forth any allegations, such allegations are denied. HPS specifically denies the existence of any damages to Vaeso.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing)

46.     Paragraph 46 of the Complaint contains no separate allegations; therefore, no specific response is required.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53. Paragraph 53 of the Complaint contains no separate allegations; therefore, no specific response is required. To the extent paragraph 53 sets forth any allegations, such allegations are denied. HPS specifically denies the existence of any damages to Vaeso.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Permanent Injunction)

54. Paragraph 54 of the Complaint contains no separate allegations; therefore, no specific response is required.

55. Denied.

56. Denied.

57. Admitted that the quoted language appears in paragraph 12 of the MSA. By way of further response, HPS states that the MSA speaks for itself. HPS denies any allegation of paragraph 57 that attempts to characterize or interpret the language of the MSA.

58. HPS denies the allegations contained in paragraph 58 of the Complaint. By way of further response, HPS states that it does not claim ownership of Vaeso's confidential information; however, HPS does claim ownership of the developed property, as defined by paragraph 9.2 of the MSA.

59. Paragraph 59 of the Complaint contains no separate allegations; therefore, no specific response is required. To the extent paragraph 59 sets forth any allegations, such allegations are denied. HPS specifically denies that Vaeso is entitled to the entry of a permanent injunction against HPS.

## AFFIRMATIVE DEFENSES

HPS raises all of the applicable affirmative defenses set forth in Fed. R. Civ. P. 8(c), 12(b), or by judicial decision including but not limited to:

## FIRST DEFENSE

Vaeso's Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Vaeso's claims are barred in whole or in part by its lack of standing to bring this action.

## THIRD DEFENSE

Vaeso's Complaint is barred by its failure to join an indispensable party.

## FOURTH DEFENSE

Vaeso's Complaint is barred by the doctrines of estoppel, estoppel by laches, waiver, failures of condition(s) precedent, failures of condition(s) subsequent, imputed notice, or statutory prerequisites.

## FIFTH DEFENSE

Vaeso's claims are barred by the statute of frauds.

## SIXTH DEFENSE

Vaeso's claims are barred in whole or in part by unclean hands.

## SEVENTH DEFENSE

Vaeso's claims are barred in whole or in part by accord and satisfaction.

## EIGHTH DEFENSE

Vaeso's claims are barred in whole or in part by novation.

## NINTH DEFENSE

Vaeso's claims are barred in whole or in part by fraud.

## TENTH DEFENSE

Vaeso's claims are barred in whole or in part, or are subject to offset or setoff, as applicable.

## ELEVENTH DEFENSE

Vaeso's claims are barred in whole or in part by the agreement(s) and subsequent agreement(s) of the parties.

## TWELFTH DEFENSE

Vaeso's claims are barred in whole or in part by reason of its failure to mitigate its alleged damages, the existence of which are denied.

## THIRTEENTH DEFENSE

Vaeso's claims are barred in whole or in part by failure of consideration or lack of consideration.

## FOURTEENTH DEFENSE

Vaeso's claims are barred in whole or in part by its own breach of agreements.

## FIFTEENTH DEFENSE

Vaeso's Complaint is barred by the applicable statute of limitation.

## SIXTEENTH DEFENSE

Vaeso's claims are barred in whole or in part by the doctrine of frustration of purpose.

## SEVENTEENTH DEFENSE

Vaeso's claims are barred in whole or in part by the doctrine of acquiescence.

## EIGHTEENTH DEFENSE

Vaeso's claims are barred in whole or in part by the doctrine of mistake, indefiniteness, and/or unenforceability.

1. Vaeso's claims for injunctive relief are barred because Vaeso cannot show that it will suffer any irreparable harm.

2.      The alleged injury or damage suffered by Vaeso, if any, would be adequately compensated by damages. Accordingly, Vaeso has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## OMNIBUS DEFENSE

In this Answer, HPS has raised or intended to raise all of the applicable affirmative defenses set forth in Fed. R. Civ. P. 8(c), Fed. R. Civ. P. 12(b), or by judicial decision that are required, or may be required, to be asserted at the time of the first pleading and reserves the right to amend its answer and assert such additional affirmative defenses as may become known to HPS either upon Vaeso amending its claims, or through discovery in this case at any time prior to trial, as appropriate. At the close of discovery, in the event that HPS cannot support any affirmative defense with an adequate factual basis, HPS will withdraw said defense.

## JURY DEMAND

HPS demand a trial by jury on all issues in this matter.

## PRAYER FOR RELIEF

WHEREFORE, HPS prays that the Court:

1.      Enter judgment in HPS's favor and against Vaeso;

2.      Dismiss Vaeso's Complaint in its entirety as against HPS; and

3.      Award HPS such other and further relief as the Court deems just and proper.

## COUNTERCLAIM PLAINTIFF HIGH PEAK SOFTWARE, INC.'S COUNTERCLAIMS AGAINST VAESO, INC. AND IMPACTIVA S. DE R.L.

### PARTIES

1. Counterclaim Plaintiff High Peak Software, Inc. ("HPS") is a Delaware corporation, with its principal place of business located at 6055 Southard Trace, Cumming, GA 30040.

2. Upon information and belief, Counterclaim Defendant Vaeso, Inc. ("Vaeso") is a corporation domiciled in the Republic of Panama, with its principal place of business located at 1201 South Ocean Drive, Unit 410N, Hollywood, FL 33019.

3. Upon information and belief, Counterclaim Defendant Impactiva S. De R.L. ("Impactiva") is a corporation domiciled in the Republic of Panama.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this Court under 28 U.S.C. § 1391 and pursuant to the parties' agreements giving rise to this action.

6. This Court has personal jurisdiction over Vaeso because Vaeso consented to the jurisdiction of this Court by virtue of filing the instant civil action in this Court.

7. This Court has personal jurisdiction over Impactiva because Impactiva consented to the jurisdiction of this Court in executing the parties' Master Services Agreement which is the subject of HPS's claims against Impactiva in this matter.

### STATEMENT OF CLAIM

8. On or about August 1, 2018, HPS and Impactiva S. de R.L. entered into a Master Services Agreement ("MSA").

9. Under the MSA, HPS was obligated to perform work on behalf of Impactiva, which work included the development of computer software.

10. Under the MSA, Impactiva was obligated to pay HPS for its work, in accordance with a payment schedule attached to and incorporated into the MSA as Exhibit B ("Exhibit B").

11. Under the MSA, the software developed by HPS for Impactiva was not a "work for hire" unless and until Impactiva fully paid HPS for its work

12. Under the MSA, HPS's obligation to assign rights in the "Developed Property," as defined in the MSA (the "Developed Property"), to Impactiva was subject to Impactiva's full payment to HPS in consideration for HPS's work performed on behalf of Impactiva.

13. HPS began performing work on behalf of Impactiva in August, 2018 and sent its first invoice to Impactiva for payment on or about August 31, 2018. HPS has sent Impactiva invoices thereafter in the ordinary course of business.

14. Payments due and owing to HPS under the MSA remain outstanding in the amount of $283,294. This outstanding balance includes payments due for solicitation of HPS resources, pursuant to the terms of the MSA.

15. In or around April 2019, HPS agreed with Impactiva and Vaeso to deviate from the schedule of billing rates attached as Exhibit B to the MSA. The parties agreed that HPS would bill "at cost" with no markup in exchange for HPS receiving equity in Vaeso equivalent to the profits HPS forewent by billing at cost rather than at the Exhibit B rates (the "At-Cost Agreement"). The value of the equity stake was intended to compensate HPS for the lost profit it was foregoing by only invoicing Impactiva/Vaeso on an at-cost basis, which as of the date of this Counterclaim is $1,842,879.

16. In or around May, 2020, Impactiva ceased making payments to HPS under the parties' agreements and Plaintiff Vaeso commenced making payments to HPS under the parties' agreements.

17. On or about September 24, 2020, HPS and Impactiva entered into an Amendment No. 1 to Master Services Agreement ("Amendment").

18. The Amendment designated Vaeso the intended third-party beneficiary of the MSA; however, the Amendment did not confer upon Vaeso any rights to the Developed Property.

19. The Amendment did not alter or eliminate any party's obligation, pursuant to the MSA and the parties' At-Cost Agreement, to pay HPS for its work performed under the MSA.

20. HPS continued to perform the work described in the MSA subsequent to the parties' entry in to the At-Cost Agreement and the Amendment.

21. Payments due and owing to HPS under the At-Cost Agreement remain outstanding in the amount of $1,842,879.

22. On or about October 3, 2021, Vaeso contacted HPS and expressed its intent to terminate the MSA.

23. On or about November 1, 2021, HPS contacted Vaeso and notified Vaeso that because HPS had not been fully paid for its work, no rights to the Developed Property had vested in either Impactiva or Vaeso.

24. To date, HPS is owed a total of approximately $2,126,173 under the MSA and the At-Cost Agreement as compensation for work performed under the MSA.

25. There is a genuine dispute among the parties concerning the ownership of the Developed Property.

## COUNTERCLAIM COUNT 1
### (Breach of Contract against Vaeso)

26. HPS re-asserts and re-alleges paragraphs 1-25 of its Counterclaims as if fully set forth.

27. To the extent Vaeso is obligated to make payments to HPS as compensation for HPS's work performed pursuant to the MSA, Vaeso has failed to make all such payments.

28. Vaeso's failure to make full and complete payments to HPS constitutes a breach of Vaeso's contractual obligations.

29. As a direct and proximate result of Vaeso's breach of its payment obligations, HPS has been damaged in an amount to be proved at trial, but in any event, not less than $2,126,173.

30. HPS is entitled to an award of damages against Vaeso in an amount to be proved at trial, but in any event, not less than $2,126,173.

## COUNTERCLAIM COUNT II
### (Quantum Meruit / Unjust Enrichment Against Vaeso)

31. HPS re-asserts and re-alleges paragraphs 1-30 of its Counterclaims as if fully set forth.

32. In performing work for Vaeso under the MSA and Amendment, HPS conferred a benefit upon Vaeso, and Vaeso knowingly received such benefit.

33. HPS expected to be compensated for its work under the MSA and for the benefit it conferred upon Vaeso.

34. Vaeso has failed to fully compensate HPS for the benefit conferred, and accordingly Vaeso has been unjustly enriched.

35. It would be unfair and unjust to allow Vaeso to retain the benefit conferred upon it by HPS without paying HPS the reasonable value of the benefit conferred.

36. As a direct and proximate result of Vaeso's actions described above, HPS has been damaged in an amount to be proven at trial.

## COUNTERCLAIM COUNT III
### (Breach of Contract Against Impactiva)

37. HPS re-asserts and re-alleges paragraphs 1-36 of its Counterclaims as if fully set forth.

38. Under the MSA and the At-Cost Agreement, Impactiva is obligated to make payments to HPS as compensation for HPS's work performed pursuant to the MSA.

39. Impactiva failed to make full and complete payments to HPS under the parties' agreements.

40. Impactiva's failure to make full and complete payments to HPS constitutes a breach of Impactiva's contractual obligations.

41. As a direct and proximate result of Impactiva's breach of its payment obligations, HPS has been damaged in an amount to be proved at trial, but in any event, not less than $2,126,173.

42. HPS is entitled to an award of damages against Impactiva in an amount to be proved at trial, but in any event, not less than $2,126,173.

## COUNTERCLAIM COUNT IV
### (Quantum Meruit / Unjust Enrichment Against Impactiva)

43. HPS re-asserts and re-alleges paragraphs 1-42 of its Counterclaims as if fully set forth.

44. In performing work for Impactiva under the MSA and Amendment, HPS conferred a benefit upon Impactiva, and Impactiva knowingly received such benefit.

45. HPS expected to be compensated for its work under the MSA and for the benefit it conferred upon Impactiva.

15

46. Impactiva has failed to fully compensate HPS for the benefit conferred, and accordingly Impactiva has been unjustly enriched.

47. It would be unfair and unjust to allow Impactiva to retain the benefit conferred upon it by HPS without paying HPS the reasonable value of the benefit conferred.

48. As a direct and proximate result of Impactiva's actions described above, HPS has been damaged in an amount to be proven at trial.

49. HPS is entitled to an award of damages against Impactiva in an amount to be proved at trial.

### COUNTERCLAIM COUNT V
### (Declaratory Judgment Against Impactiva and Vaeso)

50. HPS re-asserts and re-alleges paragraphs 1-49 of its Counterclaims as if fully set forth.

51. Under the MSA, the assignment of rights in and to the Developed Property from HPS to any other party, and the designation of such Developed Property as a "work for hire," are conditioned upon the full and complete payment to HPS of all amounts owed pursuant to the MSA and the At-Cost Agreement.

52. There is a genuine dispute between the parties regarding whether any sums remain due and owing to HPS under the MSA and the At-Cost Agreement.

53. Because the parties dispute whether HPS continues to be owed payments under the parties' agreements, a genuine dispute exists between the parties concerning the ownership of the Developed Property.

54. HPS has not been fully paid under the terms of the parties' agreements.

55. As a result of such non-payment, no rights in and to the Developed Property have vested in either Impactiva or Vaeso.

56. As a result of such non-payment, HPS continues to own and enjoy all right and interest in the Developed Property.

57. HPS is entitled to a declaration from the Court that, absent full and complete payment to HPS of all sums owed under the parties, agreements, HPS is the sole and exclusive owner of the Developed Property, with all rights and interest appurtenant thereto, including the rights to use and commercialize such Developed Property.

## **PRAYER FOR RELIEF**

WHEREFORE, HPS prays that the Court:

1. Enter judgment in HPS's favor and against Vaeso and Impactiva;

2. Award HPS damages for Vaeso's breach of contract in an amount to be proved at trial, but in any event, not less than $2,126,173;

3. Award HPS damages for Impactiva's breach of contract in an amount to be proved at trial, but in any event, not less than $2,126,173;

4. Enter a declaratory judgment in favor of HPS and against Vaeso and Impactiva that absent full and complete payment to HPS of all sums owed under the parties' agreements, HPS is the sole and exclusive owner of the Developed Property, with all rights and interest appurtenant thereto, including the rights to use and commercialize such Developed Property; and

5. Award HPS such other and further relief as the Court deems just and proper.

Dated: March 7, 2022
      New York, New York

**LISTON ABRAMSON LLP**

  /s Alex G. Patchen
David G. Liston
Alex G. Patchen
The Chrysler Building
405 Lexington Ave, 46th Floor
New York, NY 10174
Tel: (212) 257-1630
Email: david.liston@listonabramson.com
Email: alex.patchen@listonabramson.com

**PETER F. SCHOENTHALER, P.C.**

Peter F. Schoenthaler (*pro hac vice application to be filed*)
Ann Emery (*pro hac vice application to be filed*)
Christopher Rosser (*pro hac vice application to be filed*)
3200 Windy Hill Road, SE, Suite 1600E
Atlanta, Georgia 30339
Tel: (404) 592-5397
Fax: (855) 283-8983
pfs@schoenthalerlaw.com
aemery@schoenthalerlaw.com
crosser@schoenthalerlaw.com

*Counsel for Defendant/Counterclaim Plaintiff High Peak Software, Inc.*