UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

| | |
|---|---|
| VAĒSO, INC. )<br>)<br>*Plaintiff,* )<br>)<br>vs. )<br>)<br>HIGH PEAK SOFTWARE, INC. )<br>)<br>*Defendant/Third-Party* )<br>*Plaintiff.* )<br>)<br>vs. )<br>)<br>IMPACTIVA S. de R. L., )<br>)<br>*Third-Party Defendant.* ) | Cause No. 22-cv-01220 (PAE) |

NOTICE TO TAKE DEPOSITION OF DEFENDANT HIGH PEAK SOFTWARE, INC. BY :

**VINAY CHANDRA**

TO:    High Peak Software, Inc.
       Peter F. Schoenthaler, P.C.
       3200 Windy Hill Road, SE
       Suite 1600 E
       Atlanta, Georgia 30339
       Tel: (404) 592-5397
       Fax: (855) 283-8983
       pfs@schoenthalerlaw.com

**PLEASE TAKE NOTICE THAT**, pursuant to Fed. R. Civ. P. 30 et seq., on July 14, 2022 at 9:00AM EDT (or at such other time and date if agreement can be reached between counsel to the parties), Plaintiff, Vaeso, Inc. ("Vaeso") by and through the undersigned counsel, will take the deposition upon oral examination of Defendant High Peak Software, Inc. ("HPS") by **VINAY CHANDRA** via electronic means, ie., Zoom, Teams, etc).

This deposition will be taken in accordance with the Federal Rules of Civil Procedure and for all purposes authorized by law before an officer authorized to administer oaths. The deposition will be recorded by stenographic means and may be videotaped.

Pursuant to Fed. R. Civ. P. 30(b)(6), and by agreement between counsel, HPS shall produce **VINAY CHANDRA** who consents to testify on behalf of HPS with respect to the matters set forth in **Exhibit 1**, attached hereto. If **VINAY CHANDRA** does not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary.

Dated:      July 5, 2022
              Syosset, New York

                                       Yours, etc.,

                                       **THE WEINSTEIN GROUP, P.C.**
                                       s/Lloyd J. Weinstein
                                       (Rule §130-1.1a) (NYS Tech Law §304(2))
                                       6800 Jericho Turnpike, Suite 112W
                                       Syosset, New York 11791
                                       Telephone: 516-802-5330
                                       Facsimile: 516-802-5332
                                       ljw@theweinsteingroup.net

## EXHIBIT 1: Matters For Examination

1. The facts and circumstances underlying Counterclaim Count I of Defendant's Answer/Third-Party Complaint: Breach of Contract against Vaeso.

2. The facts and circumstances underlying Counterclaim Count II of Defendant's Answer/Third-Party Complaint: Quantum Meruit/Unjust Enrichment against Vaeso.

3. The facts and circumstances underlying Counterclaim Count III of Defendant's Answer/Third-Party Complaint: Breach of Contract against Impactiva S. de R.L. ("Impactiva").

4. The facts and circumstances underlying Counterclaim Count IV of Defendant's Answer/Third-Party Complaint: Quantum Meruit/Unjust Enrichment against Impactiva.

5. The facts and circumstances underlying Counterclaim Count V of Defendant's Answer/Third-Party Complaint: Declaratory Judgment against Impactiva and Vaeso.

6. The identity and location of all persons who have information relevant to the claims and defenses, counterclaims and/or third-party claims at issue in this action.

7. The scope of HPS' business and any parent, subsidiary, franchisee or agency under its control.

8. The August 1, 2018 Master Services Agreement("MSA"), which shall include communications between the parties prior to entering to the MSA.

9. HPS' performance under the MSA which shall include communications and complaints made by Vaeso to HPS.

10. The services provided and the deliverables to be provided to Vaeso.

11. The services provided and the deliverables to be provided to Impactiva.

12. The September 24, 2020 Amendment No 1 to Master Services Agreement ("Amendment"), including communications between the parties prior to entering into the Amendment.

13. The assignment between Impactiva and Vaeso concerning the services, deliverables, or software provided by HPS under the MSA.

14. HPS' treatment of the assignment between Impactiva and Vaeso.

15. Invoicing and billing practices of HPS, which shall include communications between the parties regarding the same.

16. The agreement by HPS to deviate from the billing rates set forth in the MSA, including the terms of such agreement and communications between the parties regarding the same.

17. The proposal that HPS be paid in warrants.

18. Payments to HPS under the MSA or any subsequent agreement of the parties concerning HPS's compensation, including communications between the parties regarding same.

19. Credits issued by HPS pursuant to any agreement of the parties, including communications between the parties regarding same.

20. Any complaints of delay, defects, errors, bugs or other problems with HPS' work product, including any communications between the parties regarding the same.

21. The nature of the claim against Vaeso.

22. The nature of the claim against Impactiva.

23. The factual basis underlying HPS' allegation that the sum of $283,294 is due and owing as described in paragraph 14 of the Answer, including communications between the parties regarding same.

24. The identity of the party who HPS alleges owes $283,294 and any communications in support thereof.

25. The factual basis underlying HPS' allegation that "the parties agreed that HPS would bill "at cost" with no markup in exchange for HPS receiving equity in Vaeso equivalent to the profits HPS forewent by billing at cost rather than at the Exhibit B rates (the "At-Cost Agreement") as described in paragraph 14 of the Answer, including communications between the parties regarding same.

26. The factual basis underlying HPS' allegation that "Impactiva ceased making payments to HPS" as described in paragraph 16 of the Answer, including communications between the parties regarding same.

27. The factual basis underlying HPS' allegation that "the Amendment did not confer upon Vaeso any rights to the Developed Property" as described in paragraph 18 of the Answer, including communications between the parties regarding same.

28. The factual basis underlying HPS' allegation that "the Amendment did not alter or eliminate any party's obligation" as described in paragraph 19 of the Answer, including communications between the parties regarding same.

29. The factual basis underlying HPS' allegation that the sum of $1,842,879 is due and owing as described in paragraph 21 of the Answer, including communications between the parties regarding same.

30. The identity of the party who HPS alleges owes $1,842,879 and any communications in support thereof.

31. The factual basis underlying HPS' allegation that Vaeso expressed its intent to terminate the MSA as described in paragraph 22 of the Answer, including communications between the parties regarding same.

32. The factual basis underlying HPS' allegation that the sum of $2,126,173 is due and owing as described in paragraph 24 of the Answer, including communications between the parties regarding same.

33. The factual basis underlying HPS' allegation that HPS conferred a benefit upon Vaeso as described in paragraph 32 of the Answer, including communications between the parties regarding the same.

34. The factual basis underlying HPS' allegation that Vaeso has been unjustly enriched as described in paragraph 34 of the Answer, including communications between the parties regarding the same.

35. The factual basis underlying HPS' allegation that it expected to be compensated by Impactiva, as described in paragraph 44 of the Answer, including any communications between the parties regarding the same.

36. Any efforts by HPS to mitigate any of its alleged damages and all communications between the parties regarding the same.

37. The factual basis underlying any claim of denial of delay in HPS's provision of the services, deliverables, and software under the MSA.

38. The communications that were exchanged as a result of HPS' delay in provision of services.

39. The communications that were exchanged as a result of HPS' substandard provision of services.

40. The critical path delays caused by HPS.

41. The factual basis underlying any claim of HPS of ownership of the Vaeso software.

42. The factual basis underlying any claim or conclusion reached as described in paragraph 55 of the Answer, including any communications between the parties regarding the same.

43. The factual basis underlying any claim or conclusion reached as described in paragraph 56 of the Answer, including any communications between the parties regarding the same.

44. The factual basis underlying any claim or conclusion reached as described in paragraph 57 of the Answer, including any communications between the parties regarding the same.

45. The termination of any agreement between the parties, including communications between the parties regarding same.

46. HPS' history of litigation.

47. The factual basis underlying Plaintiff's allegation that HPS "would withdraw their workers," as described in paragraph 29 of the Complaint, including communications between the parties regarding same.

48. The factual basis underlying HPS' denial that it withheld password information from Vaeso, freezing them from their own servers, including communications between the parties regarding same.

49. The efforts by HPS to monetize Vaeso's property.

50. The identity and location of any customers of HPS that are using, or have used, the same or similar services, deliverables, or software provided by HPS under the MSA, or any part thereof, including communications between HPS and such customers regarding the same.

51. The existence and terms of any agreements to provide software or services based on any of the HPS services, deliverables, or software, to any non-party to this action.

52. The type and amount of all damages sought by HPS in each counterclaim and/or third-party claim asserted in this action.

53. The facts and circumstances underlying each element of damages being sought by HPS for each counterclaim and/or third-party claim asserted in this action.

54. The method of calculating each element of damages being sought by HPS for each counterclaim and/or third-party claim asserted in this action.

55. The facts and circumstances underlying any equitable, declaratory, or any other non-monetary relief being sought by HPS in this matter.