# THE WEINSTEIN GROUP, P.C.

6800 JERICHO TURNPIKE, SUITE 112W • SYOSSET, NEW YORK 11791 • TEL: 516-802-5330 • FAX: 516-802-5332

July 8, 2022

Re: Vaeso, Inc. v. High Peak Software, Inc., 22-cv-01220 (PAE)

Dear Judge Engelmayer:

Pursuant to LR 37.2 and Individual Rule 2.C of the Court, Plaintiff, Vaeso, Inc. ("Vaeso") and Third-Party Defendant, Impactiva S. de R.L. ("Impactiva") hereby jointly oppose Defendant's letter-motion dated July 1, 2022 and respectfully file the within cross-letter-motion seeking relief under LR 37.2 and Individual Rule 2.C of the Court. Because of the dual purpose of this response, permission for a longer page limit was sought and obtained.

Addressing the Defendant's letter-motion first, Defendant's counsel argues that the demands are "reasonably calculated to lead to the production of admissible evidence" [Dkt 49]. However, as this Court is aware, this is not the correct standard, and formed the basis of the specific objections made by Vaeso and Impactiva. As was articulated by USMJ Andrew J. Peck in Fischer v. Forrest, 2017 WL 773694 (S.D.N.Y. Feb. 27, 2017): "See In re Bard IVC Filters Prod. Liab. Litig., 317 F.R.D. 562, 564 (D. Ariz. 2016) (Campbell, D.J.) ("The 2015 amendments thus eliminated the 'reasonably calculated' phrase as a definition for the scope of permissible discovery. Despite this clear change, many courts [and lawyers] continue to use the phrase. Old habits die hard. . . . The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.'")." Thus, at the outset, the Defendant is applying the wrong standard concerning the scope of permissible discovery.

By letter dated June 27, 2022 (**Attachment 1**), the undersigned corresponded with Defendant's counsel which addressed the "concern of your use of the words "any", "all" and "every" advising that the demands as written were overly broad, encompassed irrelevant information and were not proportionate to the claims or the defenses. I expressed to you the objection that the time period reflected in the demands (if there was one) goes beyond the time scope of the claims or defenses and seeks information which is unrelated to the issues. Given your client's efforts to monetize Vaeso's property, I asked that demands be narrowed to be limited to "the Services" and "the Deliverables" which you refused. I articulated two (2) instances in which my client had verification of efforts by your client to usurp my client's property." Defendant's counsel did not respond to this letter.

Now addressing each demand and the basis for each objection, Plaintiff and Third-Party Defendant answer as follow:

**Request for Production 17** concerns "end users of the Services and Deliverables." The support for the objection was that the use of "all" without meaningful limitation("all documents", "all customers", all "clients", "all contracts", for an unknown time period, that may concern confidential documentation and was not proportional to the needs of the case. Moreover, the identity or existence of any end user is not relevant to any of the claims or defenses, counterclaims or third-party claims in this matter.

**Request for Production 20** concerns the demand for a capitalization table showing the corporate capitalization structure of Vaeso.

**Request for Production 21** concerns "all balance sheets of Vaeso."

**Request for Production 22** concerns "all profit and loss statements" of Vaeso.

**Request for Production 23** demands Vaeso reveal "all" contracts with "any" third parties.

**Request for Production 24** demands that Vaeso only provide "all distribution agreements."

**Request for Production 25** demands production of unidentified documents "sufficient to show the gross revenues and net profits" of Vaeso.

**Request for Production 26** demands "all" minutes of board meetings from January 1, 2018 to date.

**Request for Production 27** demands "all notices to the shareholders of Vaeso" from January 1, 2018 to date.

Defendant's demands at 20, 21, 22, 25, 26 and 27 plainly have no relevance to the instant matters. There is nothing in the Complaint or Answer concerning any of capitalization rates, balance sheets, profit and loss statements, distribution agreements, Vaeso's revenues, board minutes or notices to shareholders. These topics are not relevant to either party's claims or defenses and are precisely the kind of discovery which the "new" Rules were designed to curtail.

Discovery is not a fishing expedition. The nature of any demand must be proportional to the claims. It must be material and relevant. It must be important in resolving the issues. The burden of its expense must outweigh its expense. FRCP 26(b)(1).

Letter-Motion Regarding Defendant's Deficient Responses
The undersigned wrote a 6-page single-spaced letter to Defendant's counsel reviewing each document demand and how the responses were deficient. Critically, Defendants provide no bills, invoices, documents or statements, which support their claims. Except for producing the MSA, the amendment and a select few emails, numerous times, the only other documents that the Defendant provided were spreadhsheets which were obviously fabricated for this litigation and are not responsive to the demands.

Plaintiff's Discovery Demands
As an initial matter, HPS objected to every demand, then engaged in production leaving unclear whether the production was limited. Turning now to the specific responses, Defendant makes no distinction in its answer to **Demand 1** which refers to Vaēso and **Demand 2** which refers to Impactiva. In responding, Defendant simply replicates the same response, largely reproducing the same information in both responses.

In **Demand 3**, request was made for "documents and communications including emails, text messages, letters, notes, sketches, videos, photos, or otherwise during the above-identified time period between HPS and the following concerning the Vaēso project" and then lists 23 names for emails. In response, Defendant again provides 71 pages of the same material as was provided responses 1 and 2 and fails to provide any responsive emails or other communications responsive to the demand.

**Demand 4** calls for documents that support the allegations in Paragraph 13 of the Answer. Defendant refers Plaintiff to pages 379-598 of production. However, a review of that production shows yet another production of the responses from 1 and 2, but no documentation that supports Paragraph 13 of the Answer.

**Demand 5** calls for documents that support Paragraph 21 of the Answer which claims that "Payments due and owing to HPS under the At-Cost Agreement remain outstanding in the amount of $1,842,879." HPS provides one email which had already been produced above and a spreadsheet which was fabricated solely for this litigation, failing to substantively answer this critical question.

**Demand 6** calls for production that support paragraph 22 of the Answer concerning Vaēso's alleged termination of the MSA. In response, Defendant only provides a few pages of emails (already produced above) which end in July of 2021, and is not responsive to the demand.

Critically, **Demand 7** calls for documents supporting paragraph 24 of the Answer which reads: "To date, HPS is owed a total of approximately $2,126,173 under the MSA and the At-Cost Agreement as compensation for work performed under the MSA." In the measly 14 pages of response – which were already provided and photocopied again – there is nothing which supports HPS' claim it is owed $2,126,173.

Defendant's 15-page response to **Demand 8** again fails to support the claims in the Answer and is merely a reproduction of documents already provided.

**Demand 9** refers to documents that support the allegation that Vaēso was conferred a benefit by HPS. In response, HPS provided yet another copy of the MSA and nothing else.

**Demand 10** looks at the 4th Affirmative Defense in the Answer which asserts: "Vaēso's Complaint is barred by the doctrines of estoppel, estoppel by laches, waiver, failures of condition(s) precedent, failures of condition(s) subsequent, imputed notice, or statutory prerequisites." HPS produced nothing in response to this demand for support for this defense.

**Demand 11** looks for support for the 6th Affirmative Defense which asserted that Vaēso had "unclean hands." HPS produced nothing in response to this demand.

**Demand 12** looks for support for the 7th Affirmative Defense which pleads accord and satisfaction. HPS produced nothing in response to this demand.

**Demand 13** looks for support for the 9th Affirmative Defense which pleads that Vaēso engaged in fraud. HPS produced nothing in response to this demand.

**Demand 14** looks for support for the 12th Affirmative Defense which pleads that Vaēso's claims are barred by a failure to mitigate. HPS produced nothing in response to this demand.

**Demand 15** looks for support for the 14th Affirmative Defense which pleads that Vaēso is barred by breach of agreements. HPS produced nothing in response to this demand.

**Demand 16** seeks production of documents that support the 16th Affirmative Defense which pleads that Vaēso's claims are barred by acquiescence. HPS produced nothing in response to this demand.

**Demand 17** seeks production of documents that support the 18th Affirmative Defense which pleads that Vaēso's claims are barred by mistake, indefiniteness and/or unenforceability. HPS produced nothing in response to this demand.

**Demand 18** looks for documents that support the claims that $283,294 is due and owing by Plaintiff or Impactiva. In response, HPS provide a two-page spreadsheet which was generated for this litigation and provides neither backup nor support for the claimed amount due as demanded.

**Demand 19** focuses on Paragraph 15 of the Answer which reads: "In or around April 2019, HPS agreed with Impactiva and Vaēso to deviate from the schedule of billing rates attached as Exhibit B to the MSA. The parties agreed that HPS would bill "at cost" with no markup in exchange for HPS receiving equity in Vaēso equivalent to the profits HPS forewent by billing at cost rather than at the Exhibit B rates (the "At-Cost Agreement"). The value of the equity stake was intended to compensate HPS for the lost profit it was foregoing by only invoicing Impactiva/Vaēso on an at-cost basis, which as of the date of this Counterclaim is $1,842,879." Arguably, this is the most important issue in this matter. In response, HPS produces 16 pages which are only reproductions of prior messages and provide no support whatsoever for a claim in the amount of $1,842,879.

**Demand 20** seeks documents that support Paragraph 18 of the Answer which reads: "The Amendment designated Vaēso the intended third-party beneficiary of the MSA; however, the Amendment did not confer upon Vaēso any rights to the Developed Property." In response, HPS only provides a copy of the Amendment, but no documents which support HPS' claims.

**Demand 21** seeks documents which support Paragraph 20 of the Answer which reads: "HPS continued to perform the work described in the MSA subsequent to the parties' entry in to the At-Cost Agreement and the Amendment." HPS produced nothing in response to this demand.

**Demand 22** seeks documents which support Paragraph 21 of the Answer which reads: "Payments due and owing to HPS under the At-Cost Agreement remain outstanding in the amount of $1,842,879." Incredibly, HPS provides nothing in support except for a recently fabricated spreadsheet and notably no support of any kind.

**Demand 23** seeks documents which support Paragraph 24 of the Answer which reads: "To date, HPS is owed a total of approximately $2,126,173 under the MSA and the At-Cost Agreement as compensation for work performed under the MSA." Again, HPS produces nothing but a recently fabricated spreadsheet and no support, invoices, bills, statements or other support for the claims.

**Demand 24** seeks documents which support Paragraph 29 of the Answer which reads: "As a direct and proximate result of Vaēso's breach of its payment obligations, HPS has been damaged in an amount to be proved at trial, but in any event, not less than $2,126,173." Again, HPS produces nothing but a recently fabricated spreadsheet – which was not even attached - and no support, invoices, bills, statements or other support for the claims.

**Demand 25** seeks documents which support Paragraph 34 of the Answer which reads: "Vaēso has failed to fully compensate HPS for the benefit conferred, and accordingly Vaēso has been unjustly enriched." In response, HPS provides no support, invoices, bills, statements or other support for the claims and only provides another copy of the MSA.

**Demand 26** seeks documents which support Paragraph 35 of the Answer which reads: "It would be unfair and unjust to allow Vaēso to retain the benefit conferred upon it by HPS without paying HPS the reasonable value of the benefit conferred." In response, HPS provides no support, invoices, bills, statements or other support for the claims and only provides yet another copy of the MSA.

**Demand 27** seeks documents which support Paragraph 38 of the Answer which reads: "Under the MSA and the At-Cost Agreement, Impactiva is obligated to make payments to HPS as compensation for HPS's work performed pursuant to the MSA." In response, HPS provides no support, invoices, bills, statements or other support for the claims and only provides yet another copy of the MSA.

**Demand 28** seeks those documents that support the allegations in Paragraph 41 of the Counterclaims providing such supporting Documents as are available to justify the claim that $2,126,173 is due and owing by Plaintiff and/or Impactiva. In response, HPS only provides a generated spreadsheet and no support for those allegations.

**Demand 29** seeks documents which support Paragraph 44 of the Answer which reads: "In performing work for Impactiva under the MSA and Amendment, HPS conferred a benefit upon Impactiva, and Impactiva knowingly received such benefit." In response, HPS provides no support, invoices, bills, statements or other support for the claims and only provides yet another copy of the MSA.

**Demand 30** seeks those Documents that support the allegations in Paragraph 47 of the Counterclaims, identifying the benefit alleged to have been conferred and the unjust enrichment. In response, HPS provides no support, invoices, bills, statements or other support for the claims and only provides yet another copy of the MSA.

**Demand 31** seeks documents which support Paragraph 54 of the Answer which reads: "HPS has not been fully paid under the terms of the parties' agreements." In response, HPS provides no documents, invoices, bills, statements or other evidence and only provides a spreadsheet manufactured for this litigation.

In response to **Demands 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52 and 53** which seek support for HPS' claims and defenses, HPS either reproduces documents already produced or fails to respond at all.

**Demand 54** seeks HPS employee schedules and HPS refuses to provide responsive documents.

**Demand 55** seeks copies of payments made by HPS to its employees and HPS refuses to provide responsive documents.

**Demand 56** seeks HPS state and federal tax returns, payroll returns, public filings and HPS refuses to provide responsive documents.

**Demand 57** seeks copies of all logs, reports, studies and the like concerning the efficiency of the work product of HPS. In response, HPS produces nothing.

**Demand 58** requires HPS to identify those bugs and deficiencies of which it was aware and in response provides nothing.

**Demand 59** requires HPS to identify those bugs and deficiencies which HPS discovered and **Demand 60** requires HPS to identify those bugs and deficiencies which Vaēso discovered and HPS provides nothing in response.

**Demand 61** focuses specifically on documents or communications that complain about delay by HPS. In response, HPS provides nothing.

**Demand 62** looks at HPS' freeze-out of Vaēso from its servers. In response HPS provides nothing.

Critically, **Demand 63** demands production of: "Provide Documents including copies of statements, invoices, accounts, reckonings or other tabulations supporting HPS' claim of monies due." HPS provides nothing in response.

Lastly, **Demand 64** asks for production of transmittal of any invoice, statement, account, reckoning or other tabulation in support of HPS' claims of money due and again, HPS provides nothing.

Defendant simply did not provide responsive documents to most questions, and for those answered it was just a re-photocopying of the same material attempting to make the response seem more substantive while ignoring responses to seminal inquiries. As is clear, each of the demands above are related to the claims and defenses of the parties, often citing to the specified paragraph, are focused to a limited time period and are proportional to the needs of the case without being unduly burdensome. Defendant's response highlights the lack of support that Defendant has for its claims. In multiple instances, HPS simply fails to respond to demands or provides spreadsheets (with no backup) which were generated only for this litigation.

The undersigned herein certifies that the foregoing deficiencies were brought to the attention of the Defendant through counsel, but Defendant's counsel did not respond to the request for a meet and confer.

Opposition to Late Request for Admission
Put simply, the Court's Case Management Order provided a specific date a document to be served and Defendant did not do so. Defendant erroneously relies on FRCP 6(a)(1)(C) to explain the late service of the Request to Admit. FRCP Rule 6 is useful for calculating response times to, ie., a motion, but not compliance with a date certain in the Case Management and Scheduling Order.

Dated:      July 8, 2022
            Syosset, New York

                                    Respectfully submitted,

                                    **THE WEINSTEIN GROUP, P.C.**
                                    s/Lloyd J. Weinstein
                                    (Rule §130-1.1a) (NYS Tech Law §304(2))

Defendant is directed to respond to plaintiff's letter by July 14, 2022.

Plaintiff is reminded that page-limit extension requests are granted by the Court, not opposing counsel. Individual Rule 1.A ("Letters may not exceed three pages in length without prior permission from Chambers.").

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge
7/11/22