

August 23, 2022

Peter F. Schoenthaler Esq.
Schoenthaler Law Group
3200 Windy Hill Rd.
Suite 1600E
Atlanta, Georgia 30339
pfs@schoenthalerlaw.com

**Vaeso V. High Peak Sotware**
**Civil Action No. 22-cv-01220-PAE**

Dear Peter:

    We need to confer as soon as possible regarding your August 19, 2022 letter, which purports to respond to our request for High Peak Software's ("HPS") production of additional documents that were specifically requested in Vaeso's First Request for Production of Documents and in our follow-up communications. Other than three pages of previously referenced documents that were not produced and a handful of publicly available documents relating to HPS, which are not responsive to our request for financial information concerning HPS, you have produced no new documents and instead refer to previously produced documents that are not responsive to our production requests. We explain below each deficiency of your production, which if we cannot satisfactorily resolve in a meet and confer, we will be forced to present to Judge Engelmayer for resolution.

    1.   The identification of documents including "numerous emails" that specify "the accrual of HPS forgone profit for providing services under the MSA" which were requested in Document Demand 7 and which were specifically referred to in Response to Interrogatory 7 ("Numerous emails were sent by HPS to Vaeso's principal Jose Suarez between August 2018 and January 2022 specifying the accrual of HPS foregone profit for providing services under the MSA.")

    Despite two written responses in a July 27, 2022 email from Chris Rosser and in your August 19, 2022 letter, you have failed to identify a single email or letter in which HPS specified "the accrual of HPS's foregone profit for providing services under the MSA." The document that you keep identifying, "native-format Excel Spreadsheets labeled 21_Excel_1-61(Second Traunch)" is a spreadsheet that was prepared in November 2021 and sent to Vaeso after Vaeso notified HPS that it was terminating the relationship. The "monthly invoices" you refer to on page 1 of your

**New York**
885 Third Avenue, 20th Floor
New York, NY 10022
Main:  212-209-3050

**Princeton**
4 Independence Way, Suite 120
Princeton, NJ 08540
Main:  609-514-1500

**Los Angeles**
227 Broadway, Suite 302
Santa Monica, CA 90401
Main:  310-337-2305

298071                        www.reitlerlaw.com

August 19, 2022 letter, are monthly invoices showing the "Cost to Company" rates, and do not reference any higher or different rates.

2. We requested bug reports, patch notes, error reports and any other data **generated by HPS** and any "reports or emails" of specifically identified "HPS QA Engineers", and you responded that these reports were on the Jira project management software. That is not a proper response. We are asking for internal and external HPS emails, communications and reports regarding bugs, patches and errors on the software HPS was developing for Vaeso. For example, Vaeso produced an August 8, 2019 communication from Anoop Sudheendra, an HPS senior QA Engineer, whose subject is "Bug Report-August 1st to August 8th". We know these documents were created and exist outside the Jira system and in HPS's files, and yet you are refusing to produce reports and documents that go to the heart of the claims at issue in the case.

3. With respect to our emailed Request No. 3 which referred to the absence of attachments that are referred to in emails produced by HPS, your response simply refers to Bates Numbered documents which may or may not have been attached to the emails. We are not able to access the attachments to the emails that HPS produced. We are entitled to see the document/schedule that was actually attached to the email, not a document/schedule that you now claim was attached to the email. We request that you provide the original emails with their attachments in a native format, rather than pdf copies you now purport contain all of the material that should have originally been produced. We further request that you ensure that your method of production and transmission preserves the metadata of these documents that will demonstrate their date and time of transmission, as there has now been considerable dispute as to whether certain schedules you reference were transmitted "contemporaneously."

4. With respect to our emailed Request No. 4 and Document Demand 18 which sought support for HPS's claim that $283,294 is due and owing, you again refer the November 2021 Excel Spreadsheet labeled "21_Excel_1-61 (Second Traunch)" and some related spreadsheets. Again, we are looking for HPS to identify specific documents, emails, invoices sent over the performance period of the contract that referred to this amount being owed. Furthermore, if you contend that "21_Excel_1-61 (Second Traunch)" was transmitted contemporaneously with invoices HPS provided over the course its relationship with Vaeso, rather than only at the end of the relationship, please produce those emails with "21_Excel_1-61 (Second Traunch)" attached in a native format.

5. With respect to our emailed Request No. 5 and Document Demand 19 which requested documents supporting HPS's lost profit of $1,842,879, you again refer to the November 2021 Excel Spreadsheet labeled "21_Excel_1-61 (Second Traunch)" and to 18_HPS_000669-000670 "which consolidates the information contained in the original invoices and spreadsheets previously produced as" a series of excel spreadsheets." The original invoices and spreadsheets do not show the lost profit calculation or the higher amounts that you are claiming. The 21_Excel_1-61 spreadsheet is, as I have said above, an after-the-fact spreadsheet prepared in November 2021. Please identify specifically any email and spreadsheet sent to Vaeso before November 2021 that shows the "foregone profit" calculation and provide the email and its attachments in a native format that preserves the transmission metadata.

6.   With respect to our emailed Request No. 6 and Document Demands 29 and 30, again please identify specifically any emails and schedules that pre-date November 2021 that refer to the accrual of monies owed by Vaeso to HPS.

7.   With respect to our emailed Request 7 and Document Demand 54 (employee schedules), Request 9 and Document Demand 57 (reports and internal communications referring to the quality and efficiency of work performed by HSP) and Request 10 and Document Demand 61 (communications and reports concerning delays in performing the work), you again refer to the Jira software. We are asking for documents from HPS's files, not reports on the Jira software. It cannot realistically be HPS's position that it has no communications or reports relating to the foregoing subject matters other than what appears on the Jira software.

8.   With respect to our emailed Request 8 and Document Demand 56, HPS is refusing to produce any financial statements, profit and loss or income statements for the period in question. HPS's position is untenable as it has asserted a claim for lost profits. (*See* HPS Answer to Interrogatory No. 7: "*Accordingly, HPS seeks the foregone profit accrued from August 2018 through January 2022 and maintains a claim to the developed property…*"). HPS has put its "foregone profit" at issue and must produce its financials, profit and loss and income statements so that its claim to foregone profits can be tested. The financials will show how HSP treated this "foregone profit" on its accounting statements. Furthermore, by entering into a "Cost to Company" based agreement with Vaeso, HPS placed its costs and expenses at issue and must provide financial statements including profit and loss and income statements, to prove up the costs that were billed to Vaeso. The relevance of HPS's financial information cannot be seriously disputed by your side given the positions HPS has taken and the issues in the case.

Very truly yours,

Leo G. Kailas