# SCHOENTHALER LAW GROUP

3200 WINDY HILL RD., SUITE 1600E
ATLANTA, GEORGIA 30339
www.schoenthalerlaw.com
TELEPHONE: 404-592-5397
FACSIMILE:  855-283-8983

*Peter F. Schoenthaler*　　　　　　　　　　　　　　　　　　　　Email:  pfs@schoenthalerlaw.com
*Christopher Rosser*　　　　　　　　　　　　　　　　　　　　　Email:  crosser@schoenthalerlaw.com

August 19, 2022

**VIA EMAIL:**

Mr. Leo Kailas, Esq.　　　　　　lkailas@reitlerlaw.com
Reitler Kailas & Rosenblatt LLP
885 Third Avenue, 20th Floor
New York, NY 10022

　　　　Re:　***Vaēso, Inc. v. High Peak Software, Inc.; Civil Action No. 22-cv-01220-PAE
　　　　　　　Pending in the U.S. District Court for the Southern District of New York***

Dear Leo:

　　　　I am writing in furtherance to your August 1, 2022 email, in which you requested "further documentation" as the following subjects 1-10, which are copied below in their entirety for your convenience.  I note that High Peak Software, Inc. ("HPS") produced documents in response to Impactiva S. de R.L.'s ("Impactiva") and Vaeso, Inc.'s ("Vaeso") (collectively, "Plaintiffs") First Requests for Production in two (2) traunches:  the first on May 23, 2022 ("First Traunch") and the second on May 28, 2022 ("Second Traunch").  HPS produced documents responsive to Plaintiffs' First Amended Requests for Production on May 31, 2022 ("Third Traunch").

Please see below HPS's responses to each of your ten requests for further documentation.

　　　　**1.**　　　　The production numbers of the "numerous emails" that specify "the accrual of HPS foregone profit for providing services under the MSA" cited in your answer to Vaeso's Interrogatory No. 7.

**Response to Emailed Request No. 1:**  Emails between the parties regarding the accrual of HPS's foregone profits were exchanged periodically during the course of the parties' relationship no less frequently than quarterly.  HPS provided Plaintiffs with at least monthly invoices via email.  Please see documents bates-labeled 21_HPS_001277-001611 (Second Traunch).  Contemporaneously with a number of those invoices, HPS provided Excel spreadsheets which set forth the accrual of the monies owed by Plaintiffs to HPS.  Please see native-format Excel Spreadsheets labeled 21_Excel_1-61 (Second Traunch).

　　　　**2.**　　　　Bug reports, patch notes, error reports and any other data generated by HPS reporting technical issues with the software or its development.  This particularly concerns the work of HPS' "QA Engineers," including but not limited to Jamuna

>Naidu, Shreya Patil, Vinod Chantala, Sateesh Bomman, Anoop Sudheendra, Akshatha Kolachalam, Vijetha, Amrit Akhouri, Raghava Soma, Kruthika H S, Bharath L C, and M B Pooja, but also concerns the work of anyone supervising their activities as well as any reports or emails they may have exchanged with management concerning bugs and patches.

**Response to Emailed Request No. 2:** All bug reports, patch notes, error reports, and other data regarding any technical issues with the software or its development work, were created, logged, and maintained on the Jira project management software, which was licensed by Plaintiffs. HPS had access to Plaintiffs' instance of the Jira software during the time HPS was performing work Plaintiffs, and HPS used Jira to create and maintain all data, reports, and records concerning its development of the software. However, upon the termination of the parties' relationship on or about October 3, 2021, HPS ceased to have access to Jira or any of the information created and maintained within the Jira software. Accordingly, the requested documentation is not within HPS's possession, custody, or control, and HPS cannot provide any additional documentation in connection with your Emailed Request No. 2.

Defendant is interested in the Jira project management software data and is serving additional discovery on the issue, contemporaneously with this letter.

>3. All attachments for emails that have already been produced, as without them we cannot fully review the communications exchanged. A selection of emails produced without all of their attachments is attached above to illustrate the issue.

**Response to Emailed Request No. 3:** Your Emailed Request No. 3 references a spreadsheet containing a list of emails with attachments, which attachments Plaintiffs state were not produced. For your convenience, I have copied the spreadsheet below. For ease of reference, I have inserted the "Line Number" column to the left of your spreadsheet. Please see HPS's response to each item, by reference to line number, below.

| LINE NUMBER | Document Type | Document Title | Bates Numbers | Attachments Missing? |
|---|---|---|---|---|
| 1 | Email | Payment to HP of $41,523 | HPS_000100, HPS_000103, HPS_000409, HPS_000414, HPS_000417, HPS_000614, HPS_000619, HPS_000622, HPS_000671, HPS_000768, HPS_000811, HPS_000892, HPS_000982 | Yes |
| 2 | Email | HP Employee / Confidentiality Agreement / Incorporate one clause into HP & VaesoAgreement | HPS_000142, HPS_000261, HPS_000333 | Yes |
| 3 | Email | Defining the next level of communications for our company | HPS_000144, HPS_000263, HPS_000335 | Yes |
| 4 | Email | Vaeso-HP BTO contract and two warrants | HPS_000180, HPS_000299, HPS_000371 | Yes |

2

| | | | | |
|---|---|---|---|---|
| 5 | Email | Comprehensive proposal for new contract and the providing of stock options tokey BG Team leaders including Vinay | HPS_000232, HPS_000304, HPS_000376, HPS_000599, HPS_001231, HPS_001236, HPS_001239, HPS_001265 | Yes |
| 6 | Email | Vinay -- enclosed are our comments of HP Team Members and our Build-to-BuyProposal -- lets find time before Wednesday to discuss | HPS_000379 | Yes |
| 7 | Email | Points to discuss | HPS_000506 | Yes |
| 8 | Email | I told Renaud to pay HP without fail by the 23rd of each month, he can deduct any doubtful amounts from the payment andreconcile in the next month | HPS_000517, HPS_000605, HPS_000631 | Yes |
| 9 | Email | Response to your email | HPS_000625, HPS_000640, HPS_000685, HPS_000782, HPS_000825, HPS_000857, HPS_000889, HPS_000906, HPS_001268 | Yes |
| 10 | Email | Response to your email dated November 1, 2021 | HPS_001271 | Yes |
| 11 | Email | High Peak Software | HPS_001275 | Yes |

**Responses by Line Number:**

<u>Line 1</u>:  The referenced email appears multiple times throughout HPS's production, including at pages HPS_000100, HPS_000103, HPS_000409, etc. as noted in your spreadsheet. The attachment to that email was also produced multiple times; once for each appearance of the email throughout HPS's production. For ease of reference and because the attachment does not change among its multiple appearances, we will not identify each and every appearance of the attachment throughout HPS's production, however, we will identify the first appearance of that attachment. Subject to the foregoing, please see native-format Excel Spreadsheet labeled 1_Excel_1 (First Traunch).

<u>Line 2</u>:  The referenced email appears multiple times throughout HPS's production, including at pages HPS_000142, HPS_000261, and HPS_000333, as noted in your spreadsheet. Because the attachments have not already been produced, we produce contemporaneously herewith one copy of the attachments to the email which has been produced under bates-labels HPS_000142, HPS_000261, and HPS_000333. Please see documents produced contemporaneously herewith labeled HPS_003732-003751.

<u>Line 3</u>:  The referenced email appears multiple times throughout HPS's production, including at pages HPS_000144, HPS_000263, and HPS_000335, as noted in your spreadsheet. Because the attachment has not already been produced, and because the attachment does not change among the email's multiple appearances, we produce contemporaneously herewith one

3

copy of the attachment to the email which has been produced under bates-labels HPS_000144, HPS_000263, and HPS_000335. Please see documents produced contemporaneously herewith labeled HPS_003752-003762.

<u>Line 4</u>: The referenced email appears multiple times throughout HPS's production, including at pages HPS_000180, HPS_000299, and HPS_000371, as noted in your spreadsheet. The attachment to that email was also produced multiple times; once for each appearance of the email throughout HPS's production. For ease of reference and because the attachment does not change among its multiple appearances, we will not identify each and every appearance of the attachment throughout HPS's production, however, we will identify the first appearance of that attachment. Subject to the foregoing, please see documents bates-labeled HPS_000183-000210 (First Traunch).

<u>Line 5</u>: The referenced email appears multiple times throughout HPS's production, including at pages HPS_000232, HPS_000304, HPS_000376, etc. as noted in your spreadsheet. The attachments to that email were also produced multiple times; once for each appearance of the email throughout HPS's production. For ease of reference and because the attachments do not change among their multiple appearances, we will not identify each and every appearance of the attachments throughout HPS's production, however, we will identify the first appearance of those attachments. Subject to the foregoing, please see documents bates-labeled HPS_000234 (First Traunch) and the native-format Excel Spreadsheet labeled 1_Excel_3 (First Traunch).

<u>Line 6</u>: The referenced email appears at page HPS_000379 as noted in your spreadsheet. The attachment to that email was produced as the native-format Excel Spreadsheet labeled 4_Excel_1 (First Traunch).

<u>Line 7</u>: The referenced email appears at page HPS_000506 as noted in your spreadsheet. Because the attachments have not already been produced, we produce contemporaneously herewith one copy of the attachments to the email which has been produced under bates-label HPS_000506. Please see documents labeled 7.E_HPS_003763-003766. Please see also native-format Excel Spreadsheets labeled 7.E_Excel_1, 7.E_Excel_2, and 7.E_Excel_3.

<u>Line 8</u>: The referenced email appears multiple times throughout HPS's production, including at pages HPS_000517, HPS_000605, and HPS_000631, as noted in your spreadsheet. Because the attachment has not already been produced, and because the attachment does not change among the email's multiple appearances, we produce contemporaneously herewith one copy of the attachment to the email which has been produced under bates-labels HPS_000517, HPS_000605, and HPS_000631. Please see documents produced contemporaneously herewith labeled HPS_003767.

<u>Line 9</u>: The referenced email appears multiple times throughout HPS's production, including at pages HPS_000625, HPS_000640, HPS_000685, etc. as noted in your spreadsheet. The attachment to that email was also produced multiple times; once for each appearance of the email throughout HPS's production. For ease of reference and because the attachment does not change among its multiple appearances, we will not identify each and every appearance of the attachment throughout HPS's production, however, we will identify the first appearance of that

4

attachment. Subject to the foregoing, please see native-format Excel Spreadsheet labeled 7_Excel_4 (First Traunch).

<u>Line 10</u>: The referenced email appears at page HPS_001271 as noted in your spreadsheet. Because the three attachments to that email have not already been produced, we produce contemporaneously herewith one copy of the three attachments to the email which has been produced under bates-label HPS_001271. Please see documents produced contemporaneously herewith labeled HPS_003768-003771.

<u>Line 11</u>: The referenced email appears at page HPS_001275 as noted in your spreadsheet. The attachments to that email were produced at pages HPS_001612-001619 (Second Traunch).

> **4.** Referring to Lloyd Weinstein's July 8, 2022 letter (the "July 8 Letter") and Demand 18, what documents support the claim that $283,294 is due and owing.

**Response to Emailed Request No. 4:** Emails between the parties regarding the accrual of monies owed by Plaintiffs to HPS were exchanged periodically during the course of the parties' relationship no less frequently than quarterly. HPS provided Plaintiffs with at least monthly invoices via email. Please see documents bates-labeled 21_HPS_001277-001611 (Second Traunch). Contemporaneously with a number of those invoices, HPS provided Excel spreadsheets which set forth the accrual of the monies owed by Plaintiffs to HPS. Please see native-format Excel Spreadsheets labeled 21_Excel_1-61 (Second Traunch). See also documents bates-labeled 18_HPS_000669-000670 (First Traunch), which consolidates the information contained in the original invoices and spreadsheets previously produced as 21_HPS_001277-001611 (Second Traunch) and 21_Excel_1-61 (Second Traunch).

> **5.** Referring to the July 8 Letter and Demand 19, please identify the documents that support HPS's alleged lost profit of $1,842,879. And as it is HPS's position that it was going to earn a roughly 100% profit above the "Cost to Company" ("CTC") rates, please provide us with HPS financials including income and profit and loss statements for the 2018-2022 period that HPS was performing the work for Vaeso.

**Response to Emailed Request No. 5:** Emails between the parties regarding the accrual of monies owed by Plaintiffs to HPS were exchanged periodically during the course of the parties' relationship no less frequently than quarterly. HPS provided Plaintiffs with at least monthly invoices via email. Please see documents bates-labeled 21_HPS_001277-001611 (Second Traunch). Contemporaneously with a number of those invoices, HPS provided Excel spreadsheets which set forth the accrual of the monies owed by Plaintiffs to HPS. Please see native-format Excel Spreadsheets labeled 21_Excel_1-61 (Second Traunch). See also documents bates-labeled 18_HPS_000669-000670 (First Traunch), which consolidates the information contained in the original invoices and spreadsheets previously produced as 21_HPS_001277-001611 (Second Traunch) and 21_Excel_1-61 (Second Traunch) as well as documents bates-labeled 30_HPS_003667-003692 (Third Traunch) and native-format Excel Spreadsheets labeled 30A_Excel_1 (Third Traunch).

To the extent that Plaintiffs request the production of HPS's income and profit and loss statements between 2018 and 2022, HPS maintains its objections to such requests as irrelevant to the claims and defenses in this matter and not reasonably calculated to lead to the production of admissible evidence.  HPS's historical financial information, including its historical profits, do not in any way pertain to the profits lost in conjunction with HPS's performance of work under the parties' Agreements in this matter.  Moreover, HPS's lost profits in this matter may be determined by calculating the difference between HPS's invoices issued under the MSA rates (which account for HPS's expected profits) compared to HPS's invoices issued under the cost-to-company rates (which deduct HPS's expected profits).

> 6. Referring to the July 8 Letter and Demands 29 and 30, what documents support the claim that a benefit has been conferred on Vaeso and that Vaeso has been unjustly enriched.

**Response to Emailed Request No. 6:**  There is no dispute that HPS rendered services to Plaintiffs under the parties' Agreements in this matter.  *See* Plaintiffs' Response to HPS's First Request for Admission No. 4.  In regard to Plaintiffs' unjust enrichment, please see emails, invoices, and native-format Excel Spreadsheets between the parties regarding the accrual of monies owed by Plaintiffs to HPS.  Please see documents bates-labeled 21_HPS_001277-001611 (Second Traunch); native-format Excel Spreadsheets labeled 21_Excel_1-61 (Second Traunch); documents bates-labeled 18_HPS_000669-000670 (First Traunch); documents bates-labeled 30_HPS_003667-003692 (Third Traunch); and native-format Excel Spreadsheets labeled 30A_Excel_1 (Third Traunch).

> 7. Referring to the July 8 Letter and Demand 54, please produce any employee schedules that HPS maintained for work on the Vaeso contract.

**Response to Emailed Request No. 7:**  HPS did not dictate specific schedules for its employees during the time HPS was performing work for Plaintiffs under the parties' Agreements in this matter.  Rather, the parties cooperated in conducting "grooming" sessions at the beginning of each labor period (a/k/a "sprint," each of which lasted approximately two (2) weeks) to allocate planned tasks and action items among the parties' employees.  During each sprint, each employee was responsible for maintaining his or her own daily schedule, provided the employee worked toward the completion of their allocated tasks.

Moreover, during each sprint, an employee may be required to perform other and additional duties in excess of his allocated tasks, in order to address new requests for the software or to troubleshoot issues identified during that sprint.

HPS's employees logged and recorded their work performed during each sprint, including the hours worked on each task, using Plaintiffs' instance of the Jira project management software.  HPS no longer has access to the Jira software or the information created or maintained within it.  Accordingly, the requested documentation is not within HPS's possession, custody, or control, and HPS cannot provide any additional documentation in connection with your Emailed Request No. 7.

Again, Defendant is interested in the Jira project management software data and is serving additional discovery on the issue, contemporaneously with this letter.

Notwithstanding the foregoing, the periodic spreadsheets provided by HPS to Plaintiffs during the course of the parties' relationship, which have already been produced in this matter, record HPS's employees' labor under the parties' Agreements in this matter. Please see native-format Excel Spreadsheets labeled 21_Excel_1-61 (Second Traunch).

> **8.** Referring to the July 8 Letter and Demand 56, please (as noted) produce all financial statements of HPS for the period in question including profit and loss and income statements.

**Response to Emailed Request No. 8:** HPS maintains its objections to this request as irrelevant to the claims and defenses in this matter and not reasonably calculated to lead to the production of admissible evidence. HPS's historical financial information, including its historical profits, do not in any way pertain to the profits lost in conjunction with HPS's performance of work under the parties' Agreements in this matter.

> **9.** Referring to the July 8 Letter and Demand 57, please produce any reports, studies or internal communications relating to the quality and efficiency of the work performed by HPS.

**Response to Emailed Request No. 9:** All reports, studies, and other data regarding the quality of HPS's development work on the software, were created, logged, and maintained on the Jira project management software, which was licensed by Plaintiffs. HPS had access to Plaintiffs' instance of the Jira software during the time HPS was performing work Plaintiffs, and HPS used Jira to create and maintain all such data and records concerning its development of the software. However, upon the termination of the parties' relationship on or about October 3, 2021, HPS ceased to have access to Jira or any of the information created and maintained within the Jira software. Accordingly, the requested documentation is not within HPS's possession, custody, or control, and HPS cannot provide any additional documentation in connection with your Emailed Request No. 9.

Again, Defendant is interested in the Jira project management software data and is serving additional discovery on the issue, contemporaneously with this letter.

> **10.** Referring to the July 8 Letter and Demand 61, please produce any communications or reports relating to the delays in performing the work for Vaeso.

**Response to Emailed Request No. 10:** All reports and other data regarding HPS's development work on the software, were created, logged, and maintained on the Jira project management software, which was licensed by Plaintiffs. HPS had access to Plaintiffs' instance of the Jira software during the time HPS was performing work Plaintiffs, and HPS used Jira to create and maintain all such reports and data concerning its development of the software. However, upon the termination of the parties' relationship on or about October 3, 2021, HPS ceased to have access to Jira or any of the information created and maintained within the Jira software. Accordingly, the

requested documentation is not within HPS's possession, custody, or control, and HPS cannot provide any additional documentation in connection with your Emailed Request No. 10.

Please feel free to contact me via email at pfs@schoenthalerlaw.com or by phone at (404) 229-4114 if you would like to discuss this matter.

Sincerely,

*/s/ Peter Schoenthaler*

Peter Schoenthaler

PFS/CR

Cc: Jack McKay, jmckay@reitlerlaw.com
Christopher Rosser, crosser@schoenthalerlaw.com
David Liston, david.liston@listonabramson.com
Alex Patchen, alex.patchen@listonabramson.com