# LISTON ABRAMSON

The Chrysler Building
405 Lexington Avenue, 46th Floor
New York, New York 10174

New York Office
Main: (212) 257-1630
www.listonabramson.com

September 12, 2022

      Re:    <u>Vaeso, Inc. v. High Peak Software, Inc., Case No. 22-CV-1220, U.S.D.C. S.D.N.Y.</u>

Dear Judge Engelmayer:

      Defendant submits this letter under Rule 37.2 of the Local Rules of this Court, Rule 2.C of the Court's Individual Rules and Practices, and the Court's September 7, 2022 Order [Dkt. 74] endorsing Plaintiffs' letter requesting a discovery conference with the Court. Defendant limits this letter to the three (3) categories of information on which Plaintiffs focused in their September 6, 2022 letter [Dkt. 70].

      Contrary to Plaintiffs' letter, Defendant produced numerous documents responsive to Plaintiffs' requests on four (4) separate occasions. Counsel for the parties have also engaged in multiple meet-and-confers to discuss both Plaintiffs' and Defendants' production of documents in this matter and have been able to consensually resolve most disputes.[1]

      Critically, on September 8, 2022, Defendant's counsel notified Plaintiffs' counsel that Defendant will supplement its production of documents with responsive native-format emails and attachments, which is anticipated to be made on or about September 16, 2022. This moots issues 1 and 3 raised in Plaintiffs' letter. Therefore, only issue 2 remains in dispute.

      **1.    Native Format Documents for Emails and Attachments.**

      While Defendant believes this issue to be moot, since the letter motion is pending, it believes it need respond to briefly respond to this issue. Plaintiffs have requested "[n]ative format documents for emails and their purported attachments." [Dkt. 70, sec. 1.]. Plaintiffs acknowledge that Defendant produced documents on three (3) separate occasions, including documents in PDF and native Excel formats. However, Plaintiffs mischaracterize the production when they state that the documents produced by Defendant were "unsearchable."

      The documents that Defendant produced on May 23, 2022; May 28, 2022; May 31, 2022; and August 19, 2022, were searchable, and every document produced was either in searchable PDF or native Excel format. The documents that Defendant produced to Plaintiffs were produced in the same format in which those documents were regularly maintained by Defendant in the ordinary course of its business. Moreover, Defendant's production of those documents complies with Fed. R. Civ. P. 34 and the Amended Civil Case Management Plan and Scheduling Order issued in this case. [Dkt. 66, ¶ 13].

      All documents produced in PDF format were bates-labeled for identification purposes. For

---

[1] While not the subject of this response letter, Defendant notes that on August 19, 2022, Defendant served upon Plaintiffs their Second Set of Interrogatories and Requests for Production, including in particular requests for information maintained on Plaintiffs' instance of the Jira project management software. Defendant's Second Requests to Plaintiffs remain outstanding and to date Plaintiffs have not provided any responsive documents.

all email attachments not converted to PDF (*i.e.* large or unwieldy Excel spreadsheets), Defendant separately labeled those documents by reference to the number of Plaintiff's Request for Production to which such document was responsive, also for identification purposes. None of the documents that Defendant produced were disassembled, converted (except to searchable PDF, in accordance with the Amended Civil Case Management Plan and Scheduling Order), or otherwise modified in any way so as to render them more burdensome to access.

Moreover, as noted above, Defendant is supplementing its document production with all native-format (.eml) emails and their attachments that are responsive to each of Plaintiffs' requests described above, with production anticipated to be made on or about September 16, 2022. Accordingly, Plaintiffs' request for Court intervention as to issue 1 is moot.

### 2. Defendant's Financial Records from August 2018 through January 2022.

Plaintiffs have requested "[f]inancial information sufficient to evaluate Defendant's profits and costs for the period of August 2018 through January 2022," including "profit and loss and income statements" without limitation to the scope of work being performed by Defendant under the parties' Agreements. [Dkt. 70, sec. 2.]. In support of their letter, Plaintiffs again mischaracterize the parties' posture, stating that "Defendant has categorically refused to provide any financial information." Plaintiffs' statement is false, as Defendant has produced all relevant documents evidencing their claim for damages in this matter. Moreover, Plaintiffs mischaracterize Defendant's claim for damages in this matter, by stating that Defendant is "asserting a claim for lost profits." Defendant is not seeking lost profits in the traditional sense. Instead, Defendant is seeking damages for Plaintiffs' breach of the parties' Agreements, which consist of monies due to Defendant on outstanding invoices issued to Plaintiffs pursuant to the billing schedule incorporated into the Parties' Master Services Agreement as well as the parties' subsequent Agreement that Defendant would bill Plaintiffs "at-cost" in exchange for equity.

Defendant has already produced all invoices exchanged between the parties during the course of their working relationship, including underlying receipts for expenses and incidental costs which were to be reimbursed pursuant to the parties' Agreements. Defendant has also produced copies of the parties' Agreements, including billing schedules, setting forth the basis for all amounts invoiced to Plaintiffs for work performed by Defendant. Moreover, Defendant has produced records of its employees' labor in performing work for Plaintiffs, including their hourly rates, number of hours worked, dates when work was performed, and tasks being performed by each employee.

Plaintiffs entered into agreements with Defendant which included and incorporated billing schedules, so Plaintiffs have already agreed to the amounts to be paid to Defendant. After the parties agreed to deviate from those billing rates, and instead agreed for Defendant to bill Plaintiffs "at-cost" in exchange for equity, Plaintiffs were provided detailed records of what Defendant's costs were, how and when Plaintiffs' outstanding balance accrued, and the amount of foregone profits which Defendant expected to be compensated for, with equity. No further information regarding Defendant's damages could be ascertained from Defendant's profit and loss and income statements, particularly to the extent they reflect Defendant's profits obtained from other projects for other entities, even if such records were produced.

Federal Rule of Civil Procedure 26(b)(1) provides that discovery may be obtained regarding *any nonprivileged matter that is relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1) (emphasis added).

Plaintiffs are not entitled to Defendants' financial records, including their profit and loss statements, for the period of August 2018 through January 2022, because such records are irrelevant and immaterial to Defendant's claim for damages in this case. Defendant's records of profits obtained on other projects for other entities are not in any way probative of Defendant's damages incurred in working for Plaintiffs on their distinct project.

Because the requested profit and loss and income statements are irrelevant and immaterial to any claim in this matter, including Defendant's damages related to *work performed for Plaintiffs*, and because all *relevant* documents as to Defendant's damages have already been produced, Plaintiffs are not entitled to any further production of Defendant's financial records.

### 3. Emails, Communications, and Reports Regarding Development of the Software.

Plaintiff has requested "[i]nternal and external emails, communications, and reports regarding bugs, patches and errors on the software" as well as email "regarding the project, delays, and scope of work." [Dkt. 70, sec. 3.].

As noted above, Defendant is supplementing its document production with all native-format (.eml) emails and their attachments that are responsive to each of Plaintiffs' above-described requests, with production anticipated to be made on or about September 16, 2022. Accordingly, Plaintiffs' request for Court intervention as to issue 3 is moot.

### Pending Depositions and Parties Jointly Seeking Extension of Discovery

In light of the forthcoming supplemental document production, the fact that Defendant is awaiting supplemental production from Plaintiff, and the need to complete depositions following such supplemental production, and given the current deadline for completing deposition in this matter, the parties intend to jointly move for an extension of the discovery period in this matter for forty-five (45) days, along with a corresponding extension of all subsequent deadlines. The parties therefore jointly request the court grant a forty-five (45) day fact discovery extension through November 14, 2022.

Respectfully submitted,

 */s/ David G. Liston*
David G. Liston

cc: Counsel of Record